UNITED STATES of America, Appellee,

v.

Brown Costello RAMEY, Appellant.

UNITED STATES of America, Appellee,

v.

Samuel Ellis FERGUSON, Appellant.

UNITED STATES of America, Appellee,

v.

James Wesley PICKETT, Appellant.

Nos. 85–5175, 85–5511 and 85–5533.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1986.

Decided May 22, 1986.

Herman E. Gaskins, Jr. (Gaskins, McMullan & Gaskins, P.A., Washington, N.C., on brief) for appellant Brown Costello Ramey.

Thomas F. Loflin, III (Loflin & Loflin, Durham, N.C., on brief) for appellant Samuel Ellis Ferguson.

(Joseph B. Cheshire, IV, John A. Maxfield, Purser, Cheshire & Parker, Raleigh, N.C., on brief), for appellant James Wesley Pickett.

John Stuart Bruce, Asst. U.S. Atty., Raleigh, N.C., for appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.

DONALD RUSSELL, Circuit Judge:

This appeal is from the conviction of three defendants, Brown Costello Ramey, Samuel Ellis Ferguson, and James Wesley Pickett (hereafter referred to as Ramey, Ferguson, and Pickett), under an indictment in which in one count all the defendants were charged with participation in a conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, in another count the defendants Ramey and Ferguson were charged with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and, lastly, two counts in which the defendant Ramey was charged with interstate travel with intent to carry on an unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952(a). The indictment in the case was returned in open court on October, 1984, about three weeks before the statute of limitations would have barred prosecution of the offenses charged. On the same day the indictment was returned, the Government moved to seal the indictment and that motion was granted by an order entered on the same day.

The grounds for sealing the indictment were stated in the Government's formal motion to seal. According to the motion, the investigation by the grand jury had been underway for about 18 months and was "at a critical stage," though "expected to be substantially concluded within approximately one month." The motion referred to the fact that "[s]everal witnesses who [are] involved in the alleged illegal activities ... are cooperating with the Government." It was said, that the publication of the indictment would have the effect of disclosing the identity of these witnesses, who could thereby be endangered and subjected to undue influence. It was further represented that there was some necessity, before disclosure of the indictment, of securing admission into the Witness Security Program of one of the Government's witnesses. The motion raised also the possibility that the published indictment, with its evidence of witness

participation, might cause Ross[1] and Ramey in particular to flee.

While this initial indictment remained sealed, and before the grand jury concluded its investigation on January 30, 1985, the grand jury returned two additional indictments, both of which were sealed. One of these additional indictments, returned on November 16, 1984, charged income tax violations by the defendant Ross and his spouse; the other, returned on January 29, 1985, charged the defendants Ross and Ramey with possession of cocaine with intent to distribute.

Warrants were issued for the arrest of the defendants under the indictments on January 30, 1985. The officers were unable to locate and take into custody the primary defendant Ross and he remained at time of trial a fugitive, said to be now in either Alaska or Brazil. Ramey, also, could not be apprehended for several days but, finally on February 8, 1985, he surrendered to the officers. On February 15, 1985, all of the indictments were unsealed.

After the unsealing of the indictment in this case, the defendants joined in a motion to dismiss the indictment "on the ground that the charges are barred by the statute of limitations (18 U.S.C. § 3282) and on the further ground that the delay in seeking an indictment and unsealing the indictment violated the due process clause of the United States Constitution." After a hearing, at which testimony was taken, that motion was denied by the magistrate. In so ruling, the magistrate found that "on October 30, 1984, the Government was trying to conclude a lengthy, secretive investigation of an alleged drug-related enterprise." He set forth a number of harassments encountered by the grand jury during its investigation. Witnesses called before the grand jury had been "recalcitrant at times." The secrecy of the grand jury had apparently been pierced with the result that "targets of the investigation had discovered the names of those persons testifying before

the Grand Jury" and "had learned of the particular number assigned to a Grand Juror." The targets of the investigation "had visited some" of the witnesses appearing before the grand jury and Ross or Ramey in particular had threatened via telephone "[m]any witnesses." Further, he found that Ross and Ramey, both targets of the investigation, "seemed to be able to anticipate the Government's moves in the investigation." He found that the Government was "concerned that defendants Ross and Ramey would flee if the indictment were public." The magistrate concluded that all these reasons for sealing the indictment "were grounded upon a factual basis." Accordingly, the magistrate found that "[t]he information presented to the Court show[ed] that the Government had a substantial prosecutorial need to seal the indictment." Finally, he held that the "[d]efendants [had] not shown any prejudice during this time the indictment was sealed" and he so decided, though he stated he did "not fully understand why the United States Attorney did not seek to unseal the indictment before he did," a statement to be read in conjunction with this finding by the magistrate: "As for the delay in making the charges public, the Court concludes, as discussed supra, that the Government did not act improperly."

On the due process claim of the defendants, the magistrate said:

> Defendant Ferguson has not shown and the Court has not found that the Government intentionally delayed in seeking the indictment from the grand jury. On the other hand, the Government was severely handicapped because of witnesses becoming recalcitrant as a result of threats and contacts. The defendant has shown no prejudice. This ground, therefore, is without merit.

The magistrate concluded by holding that the "timely filed indictment should not be dismissed." That conclusion was affirmed

---

**1.** Douglas Freeman Ross was an indicted coconspirator, charged in all six counts of the indict-
ment.

by the district court. 602 F.Supp. 821 (E.D.N.C.1985).

This cause proceeded to trial and resulted in the conviction of the defendants. The defendants have now appealed. Their principal ground of appeal, common to all three appealing defendants, relates to the sealing and the delay in unsealng of the indictment. It is the position of the defendants that the motion to dismiss on this ground was improperly denied. The defendants also raise two claims of error at trial. One of these relates to the admission of other criminal acts similar to those charged in the indictment but outside the strict time limits of the events stated in the indictment on the part of certain of the defendants; the other challenges the limitation placed by the district judge on the cross-examination of the Government's primary witnesses.[2] We find no merit in any of these claims of error and affirm the convictions.

We first address the primary objection of the defendants relating to the sealing of the indictment.

## I

An indictment returned in open court within the time allowed under the criminal statute of limitations, 18 U.S.C. § 3282, as was the indictment in this case, is a timely indictment. Moreover, the district judge or magistrate to whom an indictment is timely presented may under Rule 6(e)(4), Fed.R.Crim.P., seal the indictment and the authorities since *United States v. Michael,* 180 F.2d 55 (3d Cir.1949), *cert. denied,* 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383 (1950) have recognized that the impounding of the indictment may extend beyond the statutory period without rendering the indictment untimely. The defendants appear to concede these premises provided the sealing is within what they argue are the narrow limits for sealing an indictment under Rule 6(e)(4). In their view, the Rule provides no reason other than to assist in achieving custody of the defendants as a legitimate basis "upon which to seal the indictment." To be specific: In their view, an indictment sealed for any other reason will not toll the statute of limitations.

This argument of the defendants that the power of the court to seal an indictment under Rule 6(e)(4) is confined strictly to the period required for achieving the arrest of the defendant is not novel. It was first raised and dismissed in the earliest case to consider the application of the Rule. *United States v. Michael, supra.* In that case, Judge Maris bluntly declared for a unanimous court:

We see no basis for this contention. Criminal Procedure Rule 6(e) authorizes indictments to be kept secret during the time required to take the defendant into custody. If such secrecy may lawfully be imposed in that situation we see nothing unlawful in the court imposing secrecy in other circumstances which in the exercise of a sound discretion it finds call for such action. Nor do we find that the appellant was in fact prejudiced by the delay of 54 days in making public the indictment against him. His allegations in this regard are wholly general and there is no suggestion of any instance in which the delay impaired or destroyed any item of proof needed for his defense. We conclude that the district court did not abuse its discretion in impounding the indictment and that it, therefore, did not err in dismissing appellant's plea in abatement.

180 F.2d at 57.

That construction of the Rule has been recently reaffirmed in three carefully reasoned cases, which leave no doubt that the discretion of the district judge or magistrate to seal an indictment is broader than

---

**2.** The defendant Ferguson raised a double jeopardy defense in a pre-trial motion. The motion was denied. Ferguson purports to appeal that ruling. He has, however, not argued the claim of error, asserting that the unavailability of the transcript in another trial does not permit the presentation of the claim. We are unable to understand why a transcript is necessary to a presentation of this issue which is a legal one on what would appear to be an undisputed record. In any event, the defendant has not argued the claim and we do not address it.

merely the need to take the defendant into custody. *United States v. Edwards,* 777 F.2d 644, 647–49 (11th Cir.1985); *United States v. Mitchell,* 769 F.2d 1544, 1547–48 (11th Cir.1985); and *United States v. Southland Corp.,* 760 F.2d 1366, 1379–80 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985).

In *Southland,*[3] Judge Friendly, after thoroughly canvassing anew the background of the Rule and decisions construing it subsequent to *Michael,* said: "we see no reason for disagreeing with the *Michael* decision, rendered only three years after adoption of the Rule, a time when the intention of the framers was far better known than it now can be." 760 F.2d at 1380. And, in the later case of *Edwards,*[4] the court, relying on *Southland,* said:

> *Southland* continues its historical analysis by delving into the practice of the courts at the time the Rule was written and concludes that courts then ordered an indictment to be sealed, "[W]here the public interest requires it, or for other sufficient reason," or "for sound reasons of policy." *Southland,* 760 F.2d at 1379, 1380. Judge Friendly also explains that the Federal Rules of Criminal Procedure were not meant to be exhaustive. Therefore, that the Rule omits an enumeration of the reasons for which an indictment may be sealed is not to be read as a restriction on those reasons. In sum, reasons other than taking defendants into custody validly support the sealing of an indictment. 777 F.2d at 648.

■■■ These cases in our opinion establish that the judicial officer may grant the Government's motion to seal for any legitimate prosecutorial need and specifically that such need is not confined simply to the need to take the defendant into custody. And, in reviewing the district court's exercise of its discretion to seal in a particular case, Judge Friendly wisely put it that great deference should be accorded to the discretion of the magistrate, at least in the absence of any evidence of substantial prejudice to the defendant. The Government should be able, "except in the most extraordinary cases, to rely on that decision rather than risk dismissal of an indictment, the sealing of which it might have been willing to forego, because an appellate court sees things differently, after the expenditure of vast resources at a trial and at a time when reindictment is by hypothesis impossible." 760 F.2d at 1380. The court in *Edwards* followed this suggestion of deference to the ruling of the magistrate stated by Judge Friendly in *Southland.* In *Edwards* the magistrate recognized that "the government's only reason for filing the original indictment was to toll the running of the statute of limitations." The magistrate in her order sealing the indictment suggested this result could have been achieved by an alternative procedure which would not have required the return of the initial indictment and its sealing. Despite this, the magistrate had sealed the indictment. The court, speaking through Judge Hoffman, sitting by designation, said:

> We align ourselves with the Second Circuit in according great deference to the discretion of the magistrate. Tolling the statute of limitations on charges of conspiracy to import with intent to distribute thousands of pounds of marijuana is ar-

---

**3.** The ground for sealing the indictment in this case was that "announcement of the indictment would make it more difficult for the Government to obtain complete and truthful testimony from Frank Kitchen, a vice-president of Southland who had been granted immunity...." 760 F.2d at 1378.

**4.** The defendants in this case were the subject of an extensive investigation of both their drug violations and income tax violations related to their drug dealings. The drug violations were subject to a shorter statute of limitations than

the tax charges. Because of this, only four days remained before the drug charges were barred when the grand jury returned its drug violations indictment, but because of the longer statute of limitation for the tax charges, the grand jury was able to delay the return of the tax counts in a superseding indictment. The defendants sought the dismissal of the drug counts on the ground that the sealing was for the convenience of the Government so that it could keep the drug counts sealed until they had filed the tax counts and arrested the defendants.

guably required by the public interest and supported by sound reasons of policy. We uphold the discretion of the magistrate in this decision and find that her suggestion of an alternative procedure is not necessarily indicative of a questionable prosecutorial objective. 777 F.2d at 648–49.

*United States v. Mitchell, supra,* is particularly interesting in this regard since the district court dismissed the seven counts of the indictment charging marijuana violations, finding "that the lengthy delay [in unsealing] was not reasonable because the government failed to make any meaningful effort to find the defendants. This unreasonable delay allowed the statute of limitations to run, which the court found to be prejudicial as a matter of law." 769 F.2d at 1547. The court of appeals said this finding was "supported by the evidence and [was] affirmed." However, despite this finding, the appellate court reversed the dismissal. At the outset in its reasoning, the appellate court said that, while it recognized that the statute of limitations protects defendants against stale charges and established an incentive for the government to process cases with dispatch,

> [t]he legitimate need of the government to protect its investigations by sealing indictments, however, must also be recognized. The sealing of an indictment allows the government to complete an investigation properly, and can toll the statute of limitations when the investigation must extend beyond the statutory period.

It concluded that, even though the sealing may have been continued unreasonably as the district judge found, that fact must be balanced against the needs of the government and unless actual prejudice results from the delay, dismissal of the indictment is not in order. *Id.* at 1547–48.

This decision was followed by *Edwards* in which the court, after a thorough review of the Rule and the decisions under it, found that all of these decisions "contain a common thread": "Courts have dismissed indictments maintained under seal beyond the limitation period only upon a showing of substantial, irreparable, actual prejudice to the defendants," citing cases. 777 F.2d at 649. This language is supported by the authority of 1 Wright, *Federal Practice and Procedure,* § 110, pp. 306–7, which, commenting on Rule 6(e)(4) said:

> An indictment returned in open court before the statute of limitations has run is valid even though it is then sealed and kept secret until after the period of limitations has expired. Only if a defendant can show substantial actual prejudice in the period between the sealing of the indictment and its unsealing is dismissal of the indictment recognized on this ground.[5]

■ In this case, the defendants make no claim of *actual* prejudice. The defendants confine their attack to the grounds on which the magistrate based his decision to seal the indictment. They persist apparently in their contention that the power to seal under Rule 6(e)(4) exists only to assist in achieving custody of the defendants and may not be exercised for any other legitimate prosecutorial need. For the reasons already stated this reasoning has been repudiated. The issue before the magistrate was whether there was a legitimate prosecutorial need for the sealing, a decision which should be arrived at by giving due deference to the findings and rulings of the district judge or magistrate. In this case, the magistrate, after an evidentiary hearing, found that the sealing was to serve a legitimate prosecutorial need. He detailed the evidence on which he based that finding. This evidence which the magistrate painstakingly marshalled amply supported

---

**5.** The statement that consideration of prejudice in this connection is limited to the period between the sealing and the unsealing of the indictment in the treatise is somewhat at variance with the reasoning of the majority in the third opinion in *United States v. Watson,* 690 F.2d 15, at 17 (2d Cir.1979). Judge Friendly filed a strong dissent taking the view in *Wright.* We have no occasion in this case to take a position on the issue and reserve its consideration for a case requiring a decision on the point.

his findings. The district judge reviewed the record before the magistrate and his findings, and, after argument by the parties, affirmed the findings and conclusions of the magistrate. Those findings can only be reversed if clearly erroneous. We conclude the findings and conclusions of the magistrate, adopted and confirmed by the district judge, are supported by the evidence and are not clearly erroneous and therefore are affirmed.

## II.

■ The defendants also claim error in the admission of testimony by the witness Renn, who was employed by Ross in the distribution of marijuana in March, 1979. Shortly after that, Renn, at the direction of Ross, delivered to Ferguson at least two loads of marijuana for storing in the barn on the farm of the defendant Ferguson some months before he delivered the marijuana brought from Norfolk, Virginia, which was directly involved in the activity alleged in the indictment. One of these loads consisted of 5,500 pounds of marijuana and the second a load of 1,500 pounds. Ferguson was present on both occasions when the marijuana was stored in Ferguson's barn. Renn testified that Ross told him (Renn) that he (Ross) paid Ferguson "a dollar a pound" for storing the marijuana. All this testimony—that involving Ferguson as well as that involving Pickett and Ramey—described precisely the manner in which the marijuana brought from Norfolk and described in the indictment was handled. Unquestionably other identical instances of criminal activity to that charged in the indictment, occurring reasonably current with the activity charged in the indictment and connected with the very illegal activity which was the subject matter of the indictment, is admissible under the rubric of intent, plan, scheme or design. This has been plainly established in recent decisions of this circuit.

In *United States v. Hines,* 717 F.2d 1481, 1489 (4th Cir.1983), *cert. denied,* 467 U.S. 1214, 104 S.Ct. 2656, 2668, 81 L.Ed.2d 363, which, like this case, involved an illegal

drug conspiracy, we sustained the admission of a delivery of cocaine "several weeks after the conspiracy alleged in the indictment." In *United States v. Brugman,* 655 F.2d 540, 544 (4th Cir.1981), in which the defendants were charged with conspiracy to distribute cocaine, evidence of the receipt of marijuana by the defendants was found properly admitted under the same rule of admission for evidence of "matters having to do with opportunity, preparation, plan, motive, intent, absence of mistake and the like." Similarly, in *United States v. Hadaway,* 681 F.2d 214, 217 (4th Cir. 1981), in which Hadaway was charged with aiding and abetting in the theft of certain television sets in interstate commerce, evidence of other participation with the same individuals in the theft of other types of merchandise some "eighteen months after the crime charged" was held admissible.

In all of these cases, we recognized that, whether the probative relevance of such evidence outweighed any unfair prejudice that might result from its admission is a question the resolution of which is committed to the discretion of the district judge. The exercise of such discretion "will be reversed only if the discretion is abused." 681 F.2d at 217. We find no abuse of discretion in the rulings in this case on the admissibility of such evidence and therefore see no reason to upset the convictions on this ground.

## III.

■ Finally, the defendants complain of the district judge's refusal to admit in evidence a "Response to Motion for Reduction of Sentence," filed by an Assistant United States Attorney in opposing a reduction of sentence under a food stamp fraud conviction of the Government's chief witness Renn in another truncated trial some three years earlier. The defendants had already sought to impeach Renn's credibility by proving his conviction of this earlier food stamp fraud charge. They sought, however, to unearth the arguments used by the Government's counsel in the prosecution of Renn in that earlier case and to use such

statements of an advocate, without any showing of the basis for those statements, in order to impeach further the witness. Language used by counsel in advocacy in another case hardly qualifies as admissible evidence, but whether it does or not, it is of such doubtful relevance that its admission is within the discretion of the district judge who must balance its relevance and its prejudicial character, and the district judge's discretion is to be disturbed only for abuse of discretion. We discern no abuse of discretion in this case.

We accordingly affirm the convictions herein.

AFFIRMED.