829 F.2d 1121
 23 Fed. R. Evid. Serv. 1198
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel Angel ALBARRAN, Defendant-Appellant.
 No. 86-5183.
 United States Court of Appeals, Fourth Circuit.
 Argued July 10, 1987.
Decided Sept. 24, 1987.
 
 Appeal from the United States District Court for the District of Maryland at Baltimore. Joseph C. Howard, United States District Judge. (JH-86-0128)
 Margaret Brooke Murdock, Assistant Federal Public Defender (Fred Warren Bennett, Federal Public Defender, on brief), for appellant.
 Susan Moss Ringler, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief), for appellee.
 Before CHAPMAN and WILKINS, Circuit Judges, ANDERSON, Joseph F., Jr., United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Miguel Angel Albarran was convicted on all three counts of an indictment charging him with possessing with intent to distribute and distributing a quantity of cocaine [in violation of 21 U.S.C. Sec. 841(a)(1) ], and transporting a firearm in interstate commerce [in violation of 18 U.S.C. Sec. 924(b) ]. On appeal, he challenges certain evidentiary rulings made by the trial judge. Finding no error, we affirm.
 
 
 2
 The evidence presented at trial showed that, in early 1986, the defendant made two trips from Florida to Maryland for the purpose of selling cocaine. On the first trip, which occurred on January 10, 1986, the defendant rented a Cadillac and drove from Miami, Florida to Waldorf, Maryland with four ounces of cocaine. He was accompanied by Al Azpurua. Both the defendant and Azpurua used cocaine while on the trip. Additionally, Albarran had a .380 Baretta in the glove compartment of the automobile.
 
 
 3
 Upon their arrival in Maryland, Albarran and Azpurua contacted Alfred Loeffler, whom Albarran had met at a previous New Year's Eve party, and over the next two or three days, Loeffler introduced them to several individuals who purchased a portion of Albarran's cocaine.
 
 
 4
 Approximately one month later, on February 12, 1986, Albarran made the second trip from Flordia to Maryland, accompanied, this time, by Loeffler. Unbeknownst to Albarran, Loeffler had, subsequent to the earlier trip, switched from drug dealer to informant and was working for the District of Columbia Police Department. Again, Albarran rented a Cadillac, and he and Loeffler drove directly to Maryland, stopping only for gas. Again, a .380 Baretta was concealed in the glove compartment of the automobile.
 
 
 5
 When the two men arrived in Maryland, Loeffler reported their location to the law enforcement authorities, who arrested Albarran as he attempted to enter the rented Cadillac in the parking lot of a motel. A subsequent search revealed one pound of cocaine secreted in the trunk of the car under the side panel and two smaller packets of cocaine above the rear view mirror. A search of the defendant's person revealed the .380 Baretta and a vial of cocaine.
 
 
 6
 The indictment charged Albarran with the criminal activity which occurred on the second trip from Florida to Maryland, but not the first. Prior to trial, the district judge denied defendant's motion in limine to exclude testimony about the January trip. During Loeffler's testimony, the court overruled defense objections to Loeffler's testimony about the sale of cocaine by Albarran in January. Additionally, the court permitted Albarran to be cross-examined about his drug use during the January trip and allowed Azpurua to be recalled as a rebuttal witness for the government to testify about an earlier exchange of cocaine for a motorcycle.
 
 I.
 
 7
 Albarran first complains that the testimony regarding the cocaine sales which occurred during the first trip to Maryland should have been excluded. He argues that the evidence of the prior trip and distribution was used by the government to show a propensity or disposition on the part of the defendant to commit the crime charged. Alternatively, he contends that even if relevant, the testimony should have been excluded under Rule 403, Federal Rules of Evidence, because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.
 
 
 8
 We disagree. At trial, Albarran presented the defense that he had been set up and had no knowledge whatsoever that the pound of cocaine was secreted in his car. Given this defense, evidence of the defendant's prior involvement in cocaine distribution activity was extremely relevant and probative as to the issues of knowledge and intent during his February trip to Maryland.
 
 
 9
 Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes or acts is admissible to show, among other things, preparation, plan, knowledge, identity and absence of mistake or accident. Similar instances of criminal activity to that charged in the indictment, which occur reasonably current with and in a manner similar to that charged in the indictment, are admissible under the rubric of intent, knowledge, plan, scheme or design. United States v. Ramey, 791 F.2d 317 (4th Cir. 1986). See also United States v. Hines, 717 F.2d 1481, 1489 (4th Cir. 1983), cert. denied, 467 U.S. 1214 (1984); United States v. Hadaway, 681 F.2d 214 (4th Cir. 1982); United States v. Beahm, 664 F.2d 414, 417 (4th Cir. 1981); United States v. Johnson, 634 F.2d 735, 737 (4th Cir. 1980); United States v. Masters, 622 F.2d 83, 85 (4th Cir. 1980).
 
 
 10
 Given the nature of Albarran's defense and the fact that the government had charged him with a specific intent crime, evidence of the defendant's prior trip to Maryland for the purpose of distributing cocaine was not only probative on the issue of defendant's intent and knowledge at the time of the February 12, 1986 trip, it was also highly relevant given the close proximity in time of the two trips and the similar manner in which they occurred. On both occasions the defendant rented a Cadillac, possessed a handgun, had someone accompany him, and, upon arrival in Maryland, distributed or attempted to distribute cocaine to customers of Loeffler. Under all of these circumstances the probative value of the January trip outweighed any prejudicial effect.
 
 II.
 
 11
 Defendant's second contention is that the trial court erred in admitting, for impeachment purposes, evidence of the defendant's prior cocaine use and of a sale of cocaine to Azpurua in violation of Rule 608(b) and 404(b). On direct examination, Albarran admitted that he and Azpurua had used cocaine on the January trip and that he and Leoffler had used cocaine on the February trip. On cross-examination, he was questioned further about his use of drugs with Azpurua in January and about an earlier sale of drugs to Azpurua, for which defendant received the title to a motorcycle.
 
 
 12
 Defendant's reliance on Rule 608(b)[1] is misplaced. By the time the defendant took the stand, the court had already properly admitted evidence of the defendant's prior narcotics dealings and cocaine usage during January of 1986, and the defendant himself had admitted to using cocaine on direct examination. Rule 608(b) is a prohibition against offering extrinsic evidence to prove specific instances of misconduct for the purpose of attacking or supporting credibility. Here, the evidence was not offered for the purpose of attacking credibility, but was offered under Rule 404(b) to show the defendant's knowledge, intent, and common plan for the February trip.
 
 
 13
 Reduced to its bare essence, defendant's position is that once he took the stand to testify, evidence of prior cocaine usage and dealings was transformed from Rule 404(b) evidence to Rule 608(b) evidence merely by reason of the fact that the defendant is the one subjected to direct and cross-examination. Where evidence falls within both Rule 404(b) and 608(b), Rule 404(b) takes priority. United States v. Smith Grading & Paving, Inc., 760 F.2d 527 (4th Cir.), cert. denied 106 S.Ct. 524 (1985).
 
 
 14
 The cross-examination of the defendant and the rebuttal testimony of Azpurua were proper.
 
 
 15
 For the foregoing reasons, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Rule 608(b) provides:
 "Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.