862 F.2d 870
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alhaji Kamoru ADEYEMI, Defendant-Appellant.
 No. 87-5645.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 7, 1988.
Decided: Nov. 21, 1988.
 
 Howard L. Cardin, Cardin & Gitomer, for Appellant.
 John Vincent Geise, Office of the U.S. Attorney, for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, DONALD RUSSELL and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal from a narcotics conviction presents challenges to several evidentiary rulings and the sufficiency of the evidence supporting the verdict. Finding these contentions without merit, we affirm the conviction.
 
 I.
 
 2
 In January 1987, appellant Alhaji Adeyemi, a citizen of Nigeria, was indicted on charges of conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. Sec. 841 and distribution of in excess of 100 grams of heroin in violation of 18 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. He was convicted by a jury and sentenced to 20 years on the first count and 15 years on the second. At trial, testimony for the government came from an inmate-informant, Otis Knight, and from Drug Enforcement Administration agents. The principal DEA agent testimony came from agents June Clark and Thomas Pasquarello.
 
 
 3
 The evidence showed that while Adeyemi was serving a sentence for heroin importation at Danbury Federal Prison, he conspired to form a drug distribution operation. Adeyemi's outside agent in the scheme was one Mary Orija. Adeyemi had approached prisoner Otis Knight about possible drug transactions, and Knight informed DEA officials with the hope of trading information for help in securing parole. Adeyemi and Orija met with DEA agent Pasquarello at Danbury to discuss drug transactions. Later Adeyemi arranged for drug sales to DEA agent June Clark through Orija. Several sales took place, after which DEA agents arrested Orija and other confederates in Brooklyn, New York. After the arrests, DEA agents searched Orija's apartment and seized numerous items. One of these was Adeyemi's personal telephone book, that was marked with his nickname, "Prince." Also introduced at trial were telephone records showing numerous conversations between Orija's apartment and the inmates' phone at Danbury. Adeyemi testified at trial, and maintained that he was innocent of the charges. The other members of the conspiracy pled guilty, with the exception of one person still at large.
 
 II.
 
 4
 Adeyemi contends that three pieces of evidence were introduced at trial in violation of Fed.R.Evid. 404(b), which provides:
 
 
 5
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 6
 Adeyemi contests the admission of the fact that he was incarcerated at Danbury, his 1985 conviction for importation of heroin, and his drug conversations with agent Pasquarello in October 1986. The district court's rulings on these matters are reviewed under an abuse of discretion standard. United States v. Ramey, 791 F.2d 317, 323 (4th Cir.1986). This circuit's interpretation of Rule 404(b) would admit "all evidence of other crimes [or acts] relevant to an issue in a trial except that which tends to prove only criminal disposition." United States v. Masters, 622 F.2d 83, 85 (4th Cir.1980).
 
 
 7
 Under this standard, it is apparent that the fact of Adeyemi's incarceration at Danbury was properly admitted. Adeyemi's location at the time of the alleged criminal activity was a part of the context of the crime of which the jury needed to be aware. Absent knowledge of Adeyemi's incarceration, the evidence of phone calls from Danbury prison and Adeyemi's use of Orija to perform the drug transactions would have made no sense. This court's precedents make clear that admission of other crimes evidence is proper where necessary to provide the context of the alleged offenses. Id. at 86.
 
 
 8
 The evidence of the 1985 conviction was similarly admissible to show Adeyemi's intent and knowledge with respect to the heroin transactions. Where, as here, the evidence is of activity that is similar to the charged activity and occurred reasonably recently, the evidence is admissible "under the rubric of intent, plan, scheme, or design." See Ramey, 791 F.2d at 323. The admission of Adeyemi's conversations with agent Pasquarello was also proper. Although these conversations did not occur within the time frame of the conspiracy as described in the indictment, they occurred very close to that period, and involved similar narcotics transactions. See id.; United States v. Hines, 717 F.2d 1481, 1489 (4th Cir.1983).
 
 
 9
 Adeyemi next contends that the district court erroneously admitted statements of Orija and her courier Sammy Ikechwu under the co-conspirators exception to the hearsay rule. Hearsay statements of co-conspirators are admissible so long as the evidence, including the statements themselves, establishes the existence of the conspiracy by a preponderance of the evidence. Bourjaily v. United States, 107 S.Ct. 2775 (1987). No independent corroboration of the reliability of the statements is necessary. Id. at 2782. The testimony of informant Knight, DEA agents Pasquarello and Clark, and the telephone records of contacts between Adeyemi and Orija provided sufficient proof of the conspiracy. The statements were properly admitted.
 
 
 10
 Adeyemi's last evidentiary challenge concerns the admission of the personal telephone book found in the search of Orija's apartment. In the margin of one of the pages of the book is the following notation: "172.15 grams @ 13.8% purity. 12.5 grams @ 100% purity." At trial, Adeyemi objected to the admission of the book on grounds of relevancy. This objection was overruled. Adeyemi renews the relevancy objection. He also contends that he is entitled to a new trial because the jurors mistakenly believed that the notation referred to drug transactions. Adeyemi claims that the notations actually represent his own calculations of his eligibility for parole, stating that the parole board always considers the amount of drugs involved in a conviction by reducing the amount to a standard number based on 100% purity.
 
 
 11
 Neither of these objections is a basis for disturbing Adeyemi's conviction. The telephone book was clearly relevant, if for no other reason than to show Adeyemi's close connection to Orija. Adeyemi never objected to the admissibility of the content of the telephone book at trial. A party may not make a general objection to admissibility at trial and later on appeal raise a more specific objection. See Fed.R.Evid. 103(a)(1); 1 Weinstein's Evidence p 103 at 103-24 (1987) (citing cases). Even if Adeyemi had raised an objection at trial, we cannot say that the district court would have been required to exclude the book. Adeyemi claims that the jury misinterpreted the notations in the book. Had he raised this point at trial, he would have been entitled to present his version of the notation's meaning. His failure to do so cannot support his challenge to the conviction at this stage.
 
 
 12
 We reject Adeyemi's assertion that the district court should have interrogated the jurors after trial as to their consideration of the telephone book. The book was admitted into evidence; it was not "extraneous" material as Adeyemi contends. There was no basis for interrogation of the jurors, and Adeyemi cannot attack his conviction through an inquiry into the form of their deliberations.
 
 
 13
 Adeyemi's final contention is that the district court erred in denying his motion for acquittal at the close of the evidence. Reversal would be warranted only if viewing the evidence "in the light most favorable to the government, the jury could not reasonably find guilt beyond a reasonable doubt." E.g., United States v. King, 768 F.2d 586, 588 (4th Cir.1985). The record in this case supported the conviction, and the conviction is affirmed.
 
 III.
 
 14
 At oral argument, the government and Adeyemi's counsel joined in bringing to the court's attention an error in Adeyemi's sentence. Adeyemi's offenses were committed prior to the effective date of relevant provisions of the Sentencing Reform Act, but he was sentenced after the new provisions were in force. At the time of sentencing, it was unclear whether Adeyemi should, in addition to incarceration, be sentenced to a term of "supervised release" or a term of "special parole." The district court sentenced Adeyemi to eight years of supervised release. In United States v. Whitehead, 849 F.2d 849 (4th Cir.1988), this court held that defendants in Adeyemi's situation should be sentenced to special parole. Accordingly, we remand to the district court for alteration of Adeyemi's sentence of supervised release to one of special parole.
 
 
 15
 SO ORDERED.