937 F.2d 603
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Romeo Deguzman BILUGAN, Defendant-Appellant.
 No. 90-5852.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1991.
Decided July 9, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Richard B. Kellam, Senior District Judge. (CR-90-69)
 Loeva Jane Cook, Cook & McCracken, Norfolk, Va., for Appellant.
 Kevin Michael Comstock, Special Assistant United States Attorney, Norfolk, Va., (argued), for appellee; Henry E. Hudson, United States Attorney, Norfolk, Virginia, on brief.
 E.D.Va.
 DISMISSED IN PART AND AFFIRMED IN PART.
 Before K.K. HALL, MURNAGHAN and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Romeo Deguzman Bilugan appeals his conviction on one count of maliciously conveying false information by means of an instrument of commerce, in violation of 18 U.S.C. Sec. 844(e); he also appeals the twelve-month sentence imposed. Finding no reversible error, we affirm.
 
 I.
 
 2
 Bilugan was indicted on six counts of making bomb threats over the telephone. Bomb threats were received at the naval base at Little Creek, Norfolk, Virginia, during the period February 26, 1990, through May 23, 1990. Bilugan had been employed by the U.S. Navy from 1972 until a week before the first threat, when he received an honorable discharge. However, in 1989, Bilugan had been convicted by a court-martial of two counts involving the same type of threats for which he was later indicted.
 
 
 3
 In this case, Bilugan moved in limine to forbid the government from introducing into evidence the record of the 1989 court-martial convictions. The motion was denied, and the government introduced evidence of the convictions at trial.
 
 
 4
 The case was tried without a jury. The primary evidence against Bilugan on the single count for which he was convicted* was the testimony of two government witnesses. Jeffrey Dwyer testified that on May 23, 1990, while standing watch at the naval base, he received a telephone call during which a bomb threat was made. The telephone was equipped with a "Caller I.D. Box," and he testified that he copied the number of the incoming call displayed during the threatening call. A navy investigator, Robert Roy Vesseliza, testified that he had Bilugan under surveillance on the afternoon of May 23. At about 3:28 p.m., he observed Bilugan enter a public phone booth in Norfolk and exit about thirty seconds later. Vesseliza immediately telephoned the base and learned that a bomb threat had been received just minutes before. He then recorded the telephone number at the booth from which Bilugan had exited.
 
 
 5
 The court found Bilugan guilty of making the May 23rd threat. Under the Sentencing Guidelines, the court found that Bilugan's sentencing range was 10-16 months (offense level 12; criminal history category I), and imposed a twelve month sentence. The court denied Bilugan's request that he be given credit against the sentence for the 148 days prior to sentencing during which he was on bond that subjected him to strict restrictions on his freedom to travel. Bilugan appeals the conviction and sentence.
 
 II.
 
 6
 Bilugan makes a multi-pronged attack on the sufficiency of the evidence. We will overturn a conviction on these grounds only if, after viewing the evidence in the light most favorable to the government, we believe that any rational trier of fact could not have reached a verdict of guilty. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Under this standard of review, Bilugan's arguments fall short.
 
 
 7
 Bilugan's initial argument focuses on the alleged failure of the government to sufficiently connect the call received by Dwyer with the phone at which Bilugan was observed by Vesseliza. Although the government's scheme of proof was unduly complicated, we believe that an allowable inference can be drawn from the testimony that the bomb threat received on May 23, 1990, was made from the public phone booth by Bilugan.
 
 
 8
 Dwyer testified that he was on duty May 23 from 12:00 noon to 4:00 p.m. and that he received a phone call "in the late afternoon hours." After the threat was made, he wrote down the number displayed on the Caller I.D. box and called the base police. At trial, he identified a photograph as being "an accurate depiction of the Caller ID Box as it existed at approximately 3:58, 3:59 in afternoon of the 23rd of May, 1990." The number displayed in the photograph was 804-424-8719, the same number that Vesseliza later testified as belonging to the phone at which Bilugan was observed at about 3:30 that same day. Dwyer was never specifically asked, however, what number he copied from the Caller ID Box immediately after the threatening call was received. Moreover, it was never explained how the phone booth number came to be displayed on the Caller I.D. Box at 3:58 p.m., a half hour after Bilugan was observed at the phone booth in question. However, the photograph of the Caller I.D. Box clearly indicates the phone booth number and a date and time of May 23, 1991, at 03:24. Why that number, date and time were displayed a half hour later is never explained, but the clear inference is that the number was the same as that observed by Dwyer at the time of the call. A simple, concise question from the prosecutor would have rendered a sufficiency of evidence issue nugatory, e.g., "Mr. Dwyer, what number did you copy from the I.D. Box?" Nevertheless, the reasonable inferences from the evidence produced convince us that the district court did not err in denying Bilugan's motion for acquittal on this basis.
 
 III.
 
 9
 The second issue concerning the conviction is Bilugan's claim that the probative value of the evidence of his prior military convictions was substantially outweighed by its prejudicial effect. Fed.R.Evid. 403. Alternatively, Bilugan argues that the evidence was inadmissible under Fed.R.Evid. 404(b), because these "other crimes" were only relevant to prove character. We are inclined to agree that the evidence should not have been admitted, but we do not believe the error rose to the level of reversible error.
 
 
 10
 The trial was held without a jury. This fact certainly diminishes the role of the rules of evidence involved here. See Gulf State Util. Co. v. Ecodyne Corp., 635 F.2d 517, 519-20 (5th Cir.1981) (the weighing of probative value against prejudicial effect under Rule 403 "has no logical application to bench trials.") Moreover, the appraisal of the relative prejudicial and probative value of evidence is entrusted to the trial court's discretion; "absent extraordinary circumstances, the Courts of Appeal will not intervene in its resolution." United States v. MacDonald, 688 F.2d 224, 227-28 (4th Cir.1982). We find no abuse under Rule 403.
 
 
 11
 The Rule 404(b) ruling is a different matter. We also review the decision to admit evidence under Rule 404(b) for abuse of discretion. United States v. Ramey, 791 F.2d 317, 323 (4th Cir.1986). The district court, in ruling on defendant's objection to the introduction of the records, stated that the evidence was admissible under Rule 404(b) because it tended to show that a person who had made similar threats in the past would know the effects of such actions. We do not agree that a prior conviction for making bomb threats is helpful in proving that a defendant knew what is common knowledge, and we cannot understand how such knowledge comes into play in the prosecution of the offense charged. However, although we believe the trial court abused its discretion, we do not believe reversal of the conviction is warranted as a result.
 
 
 12
 Even when an abuse is found with regard to a discrete ruling, the effect of the error must be placed in the context of the overall proceedings, and reversal of the conviction is called for only if "a substantial right of the party is affected." Fed.R.Evid. 103(a); See Fed.R.Crim, P. 52(a); United States v. Davis, 657 F.2d 637, 640 (4th Cir.1981). Here, the other evidence supporting Bilugan's conviction was so strong that we cannot say that the improperly admitted evidence affected the verdict.
 
 IV.
 
 13
 Bilugan raises two distinct issues regarding his sentence. First, he argues that the district court erred in refusing to consider his prior military record as a possible basis for a downward departure. Second, he contends that he should receive credit against his sentence for the five months spent on bond prior to reporting to prison to begin his sentence. The second argument is foreclosed by our recent decision in United States v. Insley, 927 F.2d 185 (4th Cir.1991), in which we held that "official detention" under 18 U.S.C. Sec. 3585(b)(1) does not include conditions of release imposed prior to sentencing.
 
 
 14
 With regard to his first argument, we note that the district court stated that consideration would be given to Bilugan's extensive military service, but that Bilugan's record contained "no unusual circumstances" that would justify a departure. Without assigning a specific reason, the court ultimately imposed a sentence at the lower end of the 10-16 month guideline range.
 
 
 15
 At least one appeals court has held that a denial of a downward departure based on a defendant's military record is unreviewable. United States v. McCaleb, 908 F.2d 176 (7th Cir.1990). Another court has held that that departure may be warranted in "an unusual case." United States v. Neil, 903 F.2d 564, 566 (8th Cir.1990). One district court in our circuit has departed downward on the basis of an exceptional military record. United States v. Pipich, 688 F.Supp. 191 (D.Md.1988). A defendant may, under 18 U.S.C. Sec. 3742, appeal a refusal to depart when a sentencing court mistakenly believes that it lacked the authority to depart. United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.1990), cert. denied, 111 S.Ct. 65 (1990). In Bilugan's case, the district court never indicated that it believed it had no authority to depart on the basis of Bilugan's military record, and there is no requirement that the sentencing court affirmatively acknowledge that such authority exists. We therefore lack the authority to consider this claim, and, accordingly, this portion of Bilugan's appeal is dismissed.
 
 
 16
 DISMISSED IN PART,
 
 
 17
 AFFIRMED IN PART.
 
 
 
 *
 After both sides rested, the district court entered judgments of acquittal on five of the counts