**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 96-4001

ANDRE D. TRAVIS,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CR-95-75)

Submitted: March 11, 1997

Decided: March 26, 1997

Before MURNAGHAN, HAMILTON, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Wayne D. Inge, Roanoke, Virginia, for Appellant. Rebecca A. Betts,
United States Attorney, Miller A. Bushong, III, Assistant United
States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Andre Travis was convicted of conspiracy to distribute crack cocaine, aiding and abetting the distribution of crack, and three counts of distributing crack. Travis appeals his convictions as well as his 136-month sentence. We affirm.

I

In late 1993, the West Virginia State Police began investigating a crack ring that operated out of Calhoun's Grocery in Fayette County. Calhoun's Grocery was Travis' main distribution point. Customers, including cooperating witnesses Sherry Gray and Thomas Garrett, often went to Calhoun's to purchase crack from Travis.

On November 23, 1993, Gray met Travis at Calhoun's. Travis was driving a Cadillac and was accompanied by a passenger, Holly Woods. After Gray asked about buying $100 worth of crack, Travis and Woods showed her drugs. Gray bought the crack from Woods after Travis suggested she "get it from my boy." An audio tape of the transaction was played at trial.

On December 1, 1993, Gray approached Travis at another grocery store and purchased $100 worth of crack from him. On March 29, 1994, an undercover park ranger drove Gray to Calhoun's. The ranger waited in the car and observed Gray enter the store, then leave with Travis. Gray and Travis went to the side of the store, where Gray again bought $100 worth of crack from Travis. An audio tape of this transaction was introduced at trial.

On November 29, 1994, Travis sold crack to Garrett, who was working for the police making controlled buys from various drug dealers at Calhoun's. Travis asked Garrett if he could sell him crack. Garrett told Travis that he had promised to buy from someone else, but would return later to buy from Travis. Garrett told officers about the conversation. The police gave Garrett money and sent him back to the store to buy from Travis. Travis approached Garrett's car and

2

sold him $50 worth of crack. An audio tape of the transaction was introduced into evidence.

At trial, Gray and Garrett testified, as did indicted coconspirators Edward Grasty and Clarence Wright, who served as runners, or middlemen, between Travis and his customers. They performed this function in exchange for alcohol and cigarettes. Several law enforcement officers also testified. Travis testified in his own defense at trial, professing his innocence and denying that the voice on the tapes was his.

II

Travis first contends that the prosecutor improperly vouched for Gray and Garrett during closing argument. A prosecutor may not indicate a personal belief in the credibility of a witness. See United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). Here, however, the prosecutor did not vouch for Gray's and Garrett's credibility. Instead, he simply responded to Travis' attack on their credibility when he argued that it would make no sense for either Gray or Garrett to lie. Such argument is permissible. See United States v. Brainard, 690 F.2d 1117, 1122 (4th Cir. 1982). Further, given the overwhelming evidence against Travis, and the court's immediate instruction that argument was not evidence, the remarks could not reasonably be said to have prejudiced Travis's right to a fair trial. See United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1996).

III

During cross-examination, the prosecutor inquired whether Travis had possessed crack. Travis replied that he had not. The prosecutor then asked Travis to explain his 1994 guilty plea to possession of crack. Travis replied that he was tricked into the plea. The district court overruled Travis' objection to further questioning about the details of the prior conviction. The prosecutor briefly elicited Travis' testimony that the previous misdemeanor conviction involved two sales of crack at Calhoun's Grocery. On appeal, Travis concedes that asking about the conviction was proper but insists that further inquiry about that conviction violated Fed. R. Evid. 403 and 404.

3

A district court may admit evidence of other crimes for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but not "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). To be admissible under Rule 404(b), prior bad acts must be relevant to an issue other than character, necessary, and reliable. United States v. Aramony, 88 F.3d 1369, 1377-78 (4th Cir. 1996). Evidence that is admissible under Rule 404(b) must be excluded under Fed. R. Evid. 403 if its probative value significantly outweighs its prejudicial value. Id. at 1378.

Evidence of Travis' recent conviction for distributing crack at Calhoun's was admissible. The evidence tends to show intent, plan, scheme, or design. See United States v. Ramey , 791 F.2d 317, 323 (4th Cir. 1986). It was necessary in that it furnished part of the context of the crime and, as it was evidence of a conviction in a court of law, it was reliable. See United States v. Aramony, 88 F.3d at 1377-78. And, given the overwhelming case against Travis, the evidence was not unduly prejudicial.

IV

Travis contends that the evidence was insufficient to support his conspiracy conviction. We will uphold the jury's verdict if there was substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). In making this determination, we view the circumstantial and direct evidence in the light most favorable to the Government to decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995).

To prove a 21 U.S.C. § 846 (1994) conspiracy, the prosecution "must establish that: (1) an agreement to possess[the drugs] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (in banc), cert. denied, 1997 WL 73839 (U.S. Feb. 24, 1997) (No. 96-6868). Every conspirator need not know the details of the conspiracy's structure and organization or the identities of every conspirator. Id. at 858. "[A] loosely-knit

4

association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular consumption market" may be sufficient to establish the existence of a conspiracy. United States v. Banks, 10 F.3d 1044, 1045 (4th Cir. 1993).

There was ample evidence on which to convict Travis of conspiracy to distribute crack. He plainly headed a drug ring which operated primarily out of Calhoun's Grocery. He employed at least two runners, Grasty and Wright, who were paid for their services with alcohol and cigarettes. Additionally, he referred to Holly Woods as "my boy," when directing Gray to purchase drugs from him. The clear inference is that Woods was part of Travis' organization.

V

The district court found that at least thirty-five, but fewer than fifty, grams of crack were attributable to Travis as relevant conduct, with a resulting base offense level of 30. United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(5) (Nov. 1995). Travis does not dispute 23.45 grams included in the calculation. However, he does dispute twenty grams of crack attributed to him on the basis of Garrett's testimony.

For sentencing purposes, drug quantities attributable to persons convicted of conspiracy to distribute illegal drugs are determined by examining "the quantity of narcotics reasonably foreseeable to each conspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993); see also U.S.S.G. § 1B1.3(a)(1)(B). The United States bears the burden of establishing by a preponderance of the evidence the quantity of drugs attributable to a defendant. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). Determinations regarding reasonable foreseeability and quantity of drugs are reviewed for clear error. United States v. Banks , 10 F.3d at 1057.

At Travis' sentencing hearing, Garrett testified that he spent between $5000 and $7000 on crack he purchased from Travis. Generally, $50 bought .20 grams of crack. Travis argues that Garrett was uncertain as to how much he spent. However, the transcript plainly shows that Garrett was definite as to the minimum amount he spent.

5

The district court calculated that Garrett had made 100 $50 purchases, buying .20 grams each time, for a total of twenty grams. The court's finding was not clearly erroneous.

VI

We therefore affirm the convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid the decisional process.

AFFIRMED

6