**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Danny James WILLIAMS,
Defendant-Appellant.**

**No. 85–3009.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted, Sept. 4, 1985.

Decided Nov. 13, 1985.

As Amended May 5, 1986.

Kenneth Bauman, Portland, Or., for plaintiff-appellee.

Tommy Hawk, Portland, Or., for defendant-appellant.

Before SKOPIL and FLETCHER, Circuit Judges, and REED,* District Judge.

EDWARD C. REED, Jr., Chief Judge.

In November, 1980, Danny James Williams was indicted for burglary of an Oregon Post Office and possession of items taken in the burglary. Approximately 39 months later Williams was arrested. Williams moved to dismiss the indictment alleging violation of his right to a speedy trial. After the district court denied his motion, Williams entered a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2) and was sentenced January 7, 1985.

Williams appeals the district court's denial of his motion to dismiss the indictment. Williams also claims that the sentencing judge impermissibly relied upon a void conviction. We affirm the district court's denial of Williams' motion to dismiss the indictment. Resentencing is not required.

FACTS

Williams was publicly indicted along with three codefendants on November 13, 1980. The indictment charged Williams with a February 20, 1980, burglary of a Bridal Veil, Oregon, post office and possession of money orders and a postal service money order machine allegedly taken in the burglary. A warrant issued for Williams' arrest and his name was entered in the National Crime Information Computer (NCIC). Approximately 39 months after his indictment, Williams was arrested on local charges in Sacramento, California, using the name "Robert Bruce Williams". Although he denied that he was "Danny James Williams", a fingerprint check revealed that he was Danny Williams. A federal detainer was placed on him and he made his first appearance in Oregon September 19, 1984.

Williams became a suspect shortly after the post office burglary. At the time, Williams was on parole from the Oregon State Penitentiary and from Wichita Falls, Texas. Postal authorities contacted Williams' Oregon parole officer and learned that she had not heard from him since he had been given permission on March 4, 1980, to visit his sick grandmother. Postal inspectors also contacted the Wichita Falls, Texas, authorities.

Postal inspectors contacted his girlfriend, who either did not know Williams' whereabouts or refused to tell them. Williams' brother was also contacted.

Although the government had entered Williams' name in NCIC when the arrest warrant was issued, his name was removed from NCIC in December, 1982, because the government received information that a "Danny Williams" was in custody in New York. In April, 1983, the government determined that the New York prisoner was not Williams and, thus, re-entered his name in NCIC.

During the period of time between the indictment and his arrest, Williams worked for his father, a paralegal, in Sacramento, California. He also lived with either his father or uncle in their homes. He did not have a telephone, pay taxes, or obtain a California driver's license. At the time of his arrest in California on unrelated charges, he carried an identification card that did not contain his true name and reported a false name to the police officers at the time of his arrest and at a subsequent hearing.

Williams was sentenced January 7, 1985. The Pre-Sentence Investigation Report (PSIR) stated that a Texas arrest for burglary of a small business was later changed to aggravated robbery. The PSIR correctly reported that the conviction for aggravated robbery was later voided because Williams had not been advised of the maximum penalties he could receive when he pled guilty.

ANALYSIS

■ At issue in this case is a mixed question of law and fact. We review the application of a rule of law to the estab-

---

* Honorable Edward C. Reed, Jr., Acting Chief United States District Judge for the District of Nevada, sitting by designation.

lished facts de novo where the question requires consideration of legal concepts in the mix of facts and law, as distinguished from an essentially factual inquiry. *United States v. McConney,* 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied —* U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We review mixed questions independently when the questions involve constitutional rights. *Id.* Questions of negligence and the establishment of historical facts are reviewed under the clearly erroneous standard. *Id.* at 1202–1204.

## RIGHT TO A SPEEDY TRIAL

 No per se test has been devised to determine when the right to a speedy trial has been violated. Instead, we apply a flexible "functional analysis" in weighing the various interests. *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). We consider four factors in evaluating a Sixth Amendment speedy trial claim. *See Id.* at 530, 92 S.Ct. at 2191. These factors are:

(1) the length of delay;

(2) the reason for the delay;

(3) the defendant's assertion of the speedy trial right; and

(4) prejudice to the defendant.

*Id.* None of these factors are either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial. *Id.* at 533, 92 S.Ct. at 2193. Thus, balancing the *Barker* factors, we see valid reasons for the delay and no substantial prejudice caused by it.

### Length of Delay

Williams was indicted in November, 1980, and arrested in February, 1984, approximately a 39-month delay. It is clear that the district court was correct in finding that the 39-month delay in this case is presumptively prejudicial. This delay, therefore, serves as a "triggering mechanism" to invoke further analysis. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191.

### Reasons for the Delay

The delay in this case is attributed to the inability to locate Williams. Williams maintains that the government negligently failed to locate him.[1] He claims: (1) that he did not try to conceal his identity; (2) that he lived with his father and worked in Sacramento, California; (3) that his work for his father, a paralegal, brought him in daily contact with law enforcement officials; (4) that he had a bank account in his own name; and (5) that he filed for a California Renter's Rebate Refund in 1981.

The district court found and the government argues that the government was not negligent and that their failure to locate him was due to Williams': (1) leaving the State of Oregon without permission while on parole from that state and keeping his whereabouts unknown;[2] (2) living under circumstances where his identity could not easily be determined by law enforcement authorities; and (3) concealing his true identity when he was arrested in Sacramento, California.

 The district court's findings that the government was not negligent and that Williams' actions concealed his whereabouts are reviewed under the clearly erroneous standard. *See McConney,* 728 F.2d at 1202–1204. The district court's decision was correct under this standard.

### Defendant's Assertion of his Right to a Speedy Trial

The district court found that although there was some indication that Williams

1. Coincidentally, Williams claimed that during the period of time his name had been "negligently" removed from NCIC, he requested an NCIC check for any outstanding warrants. Williams argues that but for the government's negligence in removing his name from NCIC, he would have discovered the outstanding warrant two years prior to his arrest.

2. Although the district judge found at page four of her order that Williams left the State of Oregon without permission while on parole, she noted at page two that Williams received permission to leave March 4, 1980. This conflict may be explained in that Williams received permission to travel to Texas for a period of time March 5, 1980, through March 10, 1980. Apparently Williams contacted his parole officer on March 31, 1980, and reported that he had returned March 28, 1980. Thus, he did not have permission to be out of the state for the length of time he subsequently reported to his parole officer. In any event, the district court judge concluded that even if he did go to Texas, it was after March 4, 1980. Opinion and Order at p. 3.

may have known that postal authorities were looking for him, there was no evidence, in fact, that Williams knew of the indictment. This factual finding is not clearly erroneous. Thus, the failure to assert his right to a speedy trial will not be weighed against Williams.

*Prejudice*

■ The three interests which should be considered to determine prejudice are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker,* 407 U.S. 532, 92 S.Ct. at 2192; and *United States v. Simmons,* 536 F.2d 827, 831 (9th Cir.) *cert. denied* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976).

Williams asserts only the third interest. He argues that the passage of time made it impossible to present an alibi defense. Williams claims that there were four exculpatory witnesses who could have testified that he was in Texas at the time of the charged crimes. He claims that these four either died or were disabled so as to make testifying for him at trial impossible.[3] Williams argues that he has, therefore, been substantially prejudiced by the delay.

While prejudice to the defense is not the primary concern of the speedy trial clause, it is not irrelevant. *See Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *cf. United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (the Sixth Amendment is not "primarily intended to prevent prejudice to the defense caused by passage of time"). The prejudice to Williams in this case is minimal and speculative. Not only is it difficult to predict the effect of the death of witnesses on a trial not yet held, *United States v. MacDonald,* 435 U.S. 850, 858–59, 98 S.Ct. 1547, 1551–52, 56 L.Ed.2d 18 (1978), but the legitimacy of Williams' alibi is questionable. The burglary occurred February 20, 1980, and he did not receive permission from his parole officer to travel to Texas until March 4, 1980. The witnesses could not provide Williams with an alibi for the February 20 burglary even if they had been available to testify at a trial. Williams testified at the hearing on the motion to dismiss that he went to Texas in early February, 1980. Williams' parole officer's report indicated that permission to travel to Texas did not come until March 4, 1980. The court concluded that if he did go to Texas, he went after receiving permission from his probation officer on March 4, 1980. This factual finding is not clearly erroneous.

Accordingly, although a considerable amount of time passed between the indictment and arrest, we find that Williams' constitutional right to a speedy trial was not violated.

SENTENCING

■ It is a general principle that a judge may conduct a virtually unlimited inquiry when imposing sentence. *See Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980); *Jones v. Cardwell,* 686 F.2d 754, 756 (9th Cir.1982). It is also well-established that a sentence is subject to review if it has been enhanced in reliance on an unconstitutional conviction. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). The sentence must be set aside if the court relied at least in part on misinformation of constitutional magnitude. *Id.*

■ To successfully challenge a sentence the appellant must show that the prior conviction was unconstitutional, *United States v. Morgan,* 595 F.2d 1134, 1136 (9th Cir.1979), and that the sentencing judge mistakenly believed it was valid and used it to enhance the sentence, *United States v. Fleishman,* 684 F.2d 1329, 1346 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Assuming, arguendo, that the first prong has been satisfied, *see Quiroz v. Wawrzaszek,* 749 F.2d 1375, 1378 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2119, 85 L.Ed.2d 483 (1985) (due process requires

---

**3.** As asserted in Williams' brief, the four witnesses were appellant's relatives. Williams' Opening Brief at 7. Of the four, only one died prior to his arrest (December 1980); two died after his arrest but prior to the district court's ruling on the motion to dismiss (July, 1984, and August, 1984); and the fourth suffered a stroke in January, 1984.

defendant know maximum penalty), we find that Williams has failed to meet the other two requirements.

Where the sentencing judge is aware of infirmities in a prior conviction, and nothing in the record shows that the prior conviction was used to enhance the sentence imposed, no *Tucker* error has occurred. *Owens v. Cardwell,* 628 F.2d 546, 547 (9th Cir.1980) (per curiam). In this case, the PSIR clearly stated that Williams' Texas conviction had been declared void.

Williams' sentence was not enhanced because of the void conviction. The district court explicitly and properly relied on the underlying arrest.[4] A sentencing judge may rely on criminal conduct not resulting in conviction, *Morgan,* 595 F.2d 1136–37, and may even rely on activity which leads to an invalid conviction. *See Fleishman,* 684 F.2d at 1346.

We affirm the district court's denial of Williams' motion to dismiss the indictment.

Resentencing is not required.

---

**4.** Although we were not provided with a copy of the transcript from the sentencing, both parties' briefs quoted the judge as saying:

"And the major concern I have is that on January 14 of 1976 you were arrested for burglary of a small business, and it's the same kind of thing as this one. And, so that is my major concern in the sentence that I'm about to impose."

Williams' Brief at 8, Government's Brief at 12.