**UNITED STATES, Appellee,**

**v.**

**Ralph RICHARD, Defendant, Appellant.**

**No. 90–1997.**

United States Court of Appeals,
First Circuit.

Heard July 29, 1991.

Decided Aug. 27, 1991.

---

Howard T. Owens, Jr., with whom Owens, Schine, Nicola & Donahue, Trumbull, Conn., were on brief, for appellant.

Wayne A. Budd, U.S. Atty., with whom Robert W. Iuliano, Asst. U.S. Atty., Boston, Mass., was on brief, for appellee.

Before TORRUELLA, Circuit Judge, and BOWNES and HILL,* Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

Defendant-appellant Ralph Richard appeals his convictions for conspiracy to possess over 1,000 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. § 846; and possession with intent to distribute marijuana, distribution and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(6) and 18 U.S.C. § 2. On appeal the defendant claims that: (a) the evidence was insufficient to sustain the verdict on both counts; (b) the substantive count of the indictment should have been dismissed as outside the statute of limitations; and (c) his sentence of ten years was unconstitutionally disproportionate.

## I. SUFFICIENCY OF THE EVIDENCE

The evidence at trial showed a massive marijuana distribution organization run by brothers Wayne, Ralph, Keith and Chris

* Of the Eleventh Circuit, sitting by designation.

Maling from early 1973 into the mid–1980's. Hundreds of thousands of pounds of marijuana, imported from Mexico and Colombia, were distributed throughout the United States, yielding millions of dollars for the Maling brothers.

The evidence tying the defendant to the conspiracy included his own trial testimony. He admitted that he had been continually active in the Maling organization as a distributor, transporter and off-loader of marijuana, as well as an enforcer and collector, from 1973 to 1983. He claimed, however, that his activities ceased in 1983; this claim was the basis of his defense and underlies the sufficiency argument he now makes. Whereas the indictment charged him with acts occurring in 1984,[1] his involvement, according to him, ended outside the applicable statute of limitations period, i.e. over five years before he was indicted in 1989. We therefore focus our attention on the evidence of the defendant's 1984 involvement in the conspiracy.

Linda Bishop testified that she and her husband sold marijuana for the Maling brothers in the early to mid–1970's and 1984, and that her husband had purchased the drug in thirty- to thirty-five-pound quantities from the defendant at least twice during the spring of 1984. According to Scott Arey and Robert McIntyre, two members of the Maling organization who participated in smuggling marijuana on several occasions from the Caribbean to North Carolina, the defendant assisted in off-loading bales of Colombian marijuana from two sailboats on the North Carolina coast in May 1984. Arey and McIntyre testified to details of the 1984 smuggle. Arey remembered the defendant's suggestion during the off-loading that they keep a few bales for themselves, and both witnesses described the temporary interruption of the operation by the arrival of a Coast Guard boat. Although Arey and McIntyre testified that the defendant had also assisted in off-loading marijuana in North Carolina in 1983, they specifically recalled the above events having occurred during the May 1984 operation.

The defendant's only dispute with this evidence at trial was his claim that the events described by Arey and McIntyre occurred in 1983 and involved three boats, not two. He did not contradict the testimony of Linda Bishop.

■ Three obstacles prevent the defendant's sufficiency challenge from succeeding. First, his claim rests on the proposition that the government's witnesses were not credible. But, as credibility is a determination to be made by the jury, *United States v. Garcia,* 905 F.2d 557, 560 (1st Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990), we will not disturb the verdict on that basis. Second, he failed to move pursuant to Fed. R.Crim.P. 29 for a judgment of acquittal. In such circumstances we will not reverse on sufficiency grounds unless the "convictions were clearly and grossly unjust." *United States v. Lopez,* 709 F.2d 742, 746 (1st Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983). The defendant asserts that Arey and McIntyre

---

1. The indictment, in pertinent part, charged that the defendant, along with other co-conspirators,

> [b]eginning at an unknown date, believed to be sometime in 1973, and continuing to and including August, 1987, in the District of Massachusetts, the District of New Hampshire, the District of Maine, the Eastern District of North Carolina, the Southern District of Florida, the District of Colorado, the District of Arizona, and elsewhere ... did knowingly, willfully and intentionally combine, conspire, confederate and agree with each other, and with other persons known and unknown to the Grand Jury, to commit an offense against the United States, namely to possess with intent to distribute, and to distribute, over 1,000 kilograms of marihuana, a Schedule I con-

trolled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vii).

All in violation of Title 21, United States Code, Section 846[;] and that he, along with others,

> [i]n or about January, 1984, in the District of Massachusetts, the Eastern District of North Carolina, the Southern District of Florida, and elsewhere ... acting in concert and in furtherance of the conspiracy described in Count One, did knowingly and intentionally possess with intent to distribute, and did distribute, more than 1,000 pounds of marihuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(6), and Title 18, United States Code, Section 2.

were not worthy of belief because they were testifying under grants of immunity and had previously testified that the 1984 smuggle occurred earlier. This information, however, was revealed to the jury. The convictions are not clearly and grossly unjust. Finally, at oral argument defendant's counsel all but conceded that his sufficiency claim was a question for the jury.

Viewing the evidence in the light most favorable to the government, as we must, a rational jury could have found the defendant guilty if it credited the government's witnesses and disbelieved the defendant. This suffices to uphold the convictions.

## II. THE INDICTMENT

The defendant was tried on a third superseding indictment ("the indictment") returned on September 21, 1989. Two counts in the indictment named the defendant—count one, alleging conspiracy to possess marijuana with intent to distribute; and count seven, possession with intent to distribute and distribution of marijuana and aiding and abetting the same, "[i]n or about January, 1984." *See* note 1, *supra.* Count seven had originally been charged in a superseding indictment returned on January 5, 1989 ("the original indictment"). On that date, at the government's request, the magistrate ordered the sealing of the original indictment pursuant to Fed.R.Crim.P. 6(e)(4).[2] The indictment remained under seal until the arrest of one of the co-defendants on June 26, 1989.

The defendant moved to dismiss count seven of the September indictment on the ground that the criminal act charged was alleged to have occurred outside the five-year limitations period of 18 U.S.C. § 3282.[3] He argued that, although the return of an indictment ordinarily tolls the

statute of limitations, the original January indictment had been improperly sealed and must be deemed returned when unsealed in June, which was outside the limitations period. As discussed in Part I, *ante*, the criminal activity alleged in count seven occurred in May 1984, within five years of the January 1989 indictment.

The district court found that the government's reasons for requesting that the indictment be sealed were legitimate, that the original indictment was properly sealed, and that the defendant had not demonstrated any actual prejudice suffered as a result of the sealing. *United States v. Maling,* 737 F.Supp. 684, 694–95 (D.Mass.1990).

On appeal the defendant reiterates his argument below that the original indictment was improperly sealed because (a) Fed.R.Crim.P. 6(e)(4) permits sealing only for the purpose of gaining custody over the defendant and the government knew the defendant's whereabouts; (b) the reasons given by the government in support of the request to seal were not the basis for the government's continuing to seal the indictment; and (c) the government had no legitimate basis for keeping the indictment sealed.

Unlike the defendant, we do not read Rule 6(e)(4) so narrowly as to forbid the sealing of an indictment for any reason other than taking a defendant into custody. We agree with the other courts that have considered the question that, in keeping with the practice in effect at the time Rule 6(e)(4) was adopted, a magistrate may grant the government's request to seal an indictment "for any legitimate prosecutorial objective or where the public interest otherwise requires it." *United States v. Lakin,* 875 F.2d 168, 170–71 (8th Cir.1989) (adopting Rule 6(e)(4) historical analysis

---

**2.** Federal Rule of Criminal Procedure 6(e)(4) provides:

> Sealed indictments. The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when nec-

essary for the issuance of a warrant or summons.

**3.** 18 U.S.C. § 3282 provides:
> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

and holding in *United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985)). *Accord United States v. Srulowitz,* 819 F.2d 37, 40 (2d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987); *United States v. Ramey,* 791 F.2d 317, 321 (4th Cir.1986); *United States v. Edwards,* 777 F.2d 644, 648 (11th Cir.1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 1645, 90 L.Ed.2d 189 (1986). "[S]uch [prosecutorial] need is not confined simply to the need to take the defendant into custody." *United States v. Ramey,* 791 F.2d at 321.

■ Here the government sought to have the indictment sealed, as the district court found, because of its fear that "several of the defendants might flee upon hearing of the indictment and one of the defendants, Ralph Richard, would receive excessive publicity which could jeopardize taking the others into custody." 737 F.Supp. at 694 (footnote omitted). The government had represented to the magistrate that defendant Richard was especially a target of media attention because of the previous massive publicity given to the defendant when he had been a suspect in Rhode Island in the murder of his baby.[4] 737 F.Supp. at 694 n. 11. The defendant does not dispute these findings.

The defendant does claim, however, that his whereabouts "were easily and immediately ascertainable," and that the indictment should have been promptly unsealed. He points to nothing in the record to support this naked assertion. To the contrary, the trial court found that the government was not able to locate the defendant and co-defendant Keith Maling "who were only arrested upon surrendering to authorities in early July 1989." 737 F.Supp. at 694 & n. 12. This finding is not clearly erroneous.

■ As for the defendant's claim that the indictment should be dismissed because

the government's delay in unsealing it was unrelated to its original reasons for seeking an order to seal, he cites no authority for the implied proposition that the government must return to the magistrate as each new reason for continuing the sealing order arises. It is sufficient that, at a hearing on the defendant's motion to dismiss, the government proffered a legitimate prosecutorial objective or demonstrated that sealing was in the public interest. *See Lakin,* 875 F.2d at 170–71. In this regard the district court found:

> According to sworn affidavits from the present prosecuting attorney, the government initially attempted to apprehend the four defendants beginning in January 1989. After three or four weeks, however, the government was unable to locate all four of the defendants. Sometime later, in early March 1989, the office of the United States Attorney in Boston was undergoing administrative changes and, in late March, the case was reassigned to the current prosecuting attorney. Furthermore, at or about the same time, significant new information concerning the alleged drug conspiracy came to the attention of the government which required further investigation.

737 F.Supp. at 694. We agree with the district court that these reasons for delay in unsealing the indictment were legitimate prosecutorial objectives. *See generally Lakin,* 875 F.2d at 170 (sealing indictment proper for gathering further evidence against defendant); *Ramey,* 791 F.2d at 318 (sealing proper to protect cooperating witnesses).[5]

Finally, although "a showing of substantial, irreparable, actual prejudice" to a defendant may justify dismissal of an indictment sealed beyond the limitation period, *Edwards,* 777 F.2d at 649, the defendant merely asserts conclusorily that he suffered prejudice as a result of the sealing.

---

4. Richard was later acquitted of all charges relating to this.

5. The defendant's supporting reference to *United States v. Cosolito,* 488 F.Supp. 531 (D.Mass. 1980), does not assist him. There the court, declining to reach the question of whether the

government's proffered reasons in support of a sealing request would be legitimate if factual, dismissed the indictment because it found the government had factually misrepresented its basis for the request to seal. No similar claim is made here.

120

The trial court properly denied the motion to dismiss.

## III. THE SENTENCE

The defendant complains that his sentence of two concurrent terms of ten years imprisonment on his two convictions was disproportionate to the sentences meted out to the other co-conspirators, who pled guilty. The record indicates that, except for Ralph and Keith Maling, who received a ten-year and a seven-year sentence respectively, the other figures in the drug conspiracy received four years or less.

■ Because the charged conduct occurred prior to November 1, 1987, the sentencing guidelines do not apply. "In a pre-Guidelines case, the sentencing judge has very broad discretion in determining the appropriate punishment in a particular situation." *United States v. Gomez–Pabon,* 911 F.2d 847, 862 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991). Unless a sentence is outside the statutory limit or is so disproportionate to the offense as to violate the eighth amendment prohibition against cruel and unusual punishment, we will not ordinarily review it. *Id.* "Furthermore, a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." *Id.*

■ The defendant concedes that his sentence is within the statutory limits for the crimes of which he stands convicted. Contrasting the lesser sentences of his co-defendants, however, he claims that his sentence was the impermissible result of his having exercised his right to go to trial. He points to no evidence of actual vindictiveness by the district court but suggests that the evidence may be found in the court's "impression" prior to trial that the defendant would plead guilty. This is sheer speculation. As we have previously held in a situation where a defendant who stood trial made a similar complaint, "the circumstances do not pose the realistic likelihood of vindictiveness that would justify a presumption of retaliatory motive." *Unit-*

*ed States v. Ibern–Maldonado,* 823 F.2d 698, 699 (1st Cir.1987) (citations omitted).

What the circumstances do show are a defendant with a multi-faceted ten-year involvement in a major marijuana distribution conspiracy and a sentencing judge who had heard nine days of trial testimony concerning this involvement. The defendant himself admitted at trial that he distributed thousands of pounds of marijuana, traveling to Arizona and Florida to obtain the drugs for distribution in New England. As an enforcer for the organization, the defendant testified, he once volunteered to attempt to recover 1200 pounds of marijuana, valued at half a million dollars, that had been stolen. Standing to make $25,000 if successful in reclaiming the drugs or their money equivalent, the defendant traveled to Colorado with a club and a set of handcuffs, intending to track down the man suspected of the theft. Planning but unable to obtain a gun to take along, he intended to use the club on the thief. Once in Colorado the defendant and an associate stalked an individual, handcuffed him and abducted him before they discovered they had the wrong man. Subsequently the defendant telephoned the thief several times, threatening his life. These events occurred within one year prior to the May 1984 offloading operation that formed the basis of count seven of the indictment.

"Generally, there is no limitation on the information which a court may consider in sentencing other than that the information bear sufficient indicia of reliability to support its probable accuracy...." *United States v. Berzon,* 941 F.2d 8, 21 (1st Cir. 1991). Thus, the evidence concerning the defendant's ten years of distribution and debt collection/"enforcement," even though not independently prosecuted, was nonetheless "highly relevant to the sentencing decision." *United States v. Kimball,* 741 F.2d 471, 475 (1st Cir.1984). There can be no challenge to the information's reliability; it was proffered by the defendant himself. We hold that, notwithstanding that the sentence was greater than that of some other co-conspirators, it

was not so out of line with the defendant's own role in the conspiracy as to constitute cruel and unusual punishment.

*Affirmed.*