UNITED STATES of America,
Plaintiff–Appellant,

v.

James Ray SHELL, a/k/a Kelly Barrick Bonney, a/k/a Chris Raymond Weber, Defendant–Appellee.

No. 91–30206.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1992.

Decided April 3, 1992.

Brian P. Conry, Portland, Or., for defendant-appellee.

Douglas B. Whalley, Asst. U.S. Atty., Seattle, Wash., Patty Merkamp Stemler, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Before: WRIGHT and ALARCON, Circuit Judges, and FONG,* District Judge.

EUGENE A. WRIGHT, Circuit Judge.

The government appeals from an order dismissing an indictment charging James Ray Shell with one count of passport falsification, 18 U.S.C. § 1542. The district court held that the indictment was not found within the ten-year limitation period, and that the preindictment delay violated Shell's Sixth Amendment right to a speedy trial. Although we do not approve of the government's failure to investigate actively a defendant's whereabouts after sealing an indictment, as to this defendant, the mere passage of time was not prejudicial. We reverse.

* Honorable Harold M. Fong, United States District Judge, for the District of Hawaii, sitting by designation.

## I

In October 1978, Shell applied for a passport using the name "Kelly Barrick Bonney." Bonney is the brother of Shell's exgirlfriend, Megan Bonney. Shell falsely stated in his passport application that he was born in Salem, Oregon, on September 10, 1952, and that he was the son of Lewis Sanford Bonney and Mary Joan Roddy.

Late in 1978 and early 1979, Shell was under investigation for heroin smuggling. DEA agents searched his residence for the false passport in May 1979. During the search, Shell told the agents that the Bonney passport no longer existed.

One month after the DEA search of his home, Shell applied for another passport using the name Chris Raymond Weber. A short time later, Shell and Megan Bonney moved to Hong Kong, where Shell lived under the Weber name. In 1982, he and Megan Bonney were arrested for violating local immigration laws and were deported to Guam. During the next eight years, Shell lived in Guam using the Weber name. He worked as a taxi driver and had a driver's license. He had a real estate license too, and later worked as a real estate agent.

In January 1984, a federal grand jury in the Western District of Washington returned an indictment against Shell on the passport charge. The government requested that the indictment be sealed pursuant to Fed.R.Crim.P. 6(e)(4). There is no record explaining why it was sealed. At the time of the indictment the government personnel were aware that Shell had falsified a second passport application using the Weber alias. The government issued a warrant for his arrest and placed his name (with the Bonney and Weber aliases) in the National Crime Information Center and the Treasury Enforcement Communication System databanks.

Over the next five years, the government did not investigate Shell's whereabouts because it had misplaced his working file. In mid–1989, after a call from the San Fran-

cisco investigator's office complaining that a report on the Shell case was overdue, the government began another investigation. In September 1990, after interviewing Shell's family and Megan Bonney, the government located Shell in Guam and arrested him on the outstanding passport charge.

Shell moved to dismiss the indictment. The district court granted the motion on the grounds that the criminal act charged occurred outside the ten-year limitation period of 18 U.S.C. § 3291, and that the post-indictment delay violated his Sixth Amendment right to a speedy trial. We reverse.

## II

The district court held that dismissal of Shell's indictment was mandated because it violated the statute of limitation. The government acknowledges that the ten-year statute expired but asserts that the 1984 indictment sealed under Rule 6(e)(4)[1] tolled the limitation period.

The statute of limitation applicable to Shell's prosecution provides:

> No person shall be prosecuted, tried, or punished for violation of any provisions of ... sections 1541–1544, inclusive, of chapter 75 of title 18 of the United States Code ... unless the indictment is found or the information is instituted within ten years after the commission of the offense.

18 U.S.C. § 3291.

■ For purposes of tolling the statute, an indictment is found when it is returned by the grand jury and filed. Fed. R.Crim.P. 6(f). This circuit has not addressed the issue whether a sealed indictment is "found" when it is returned, even if it is not unsealed until the limitation period expires.

Courts that have considered this issue have held that when a sealed indictment is not opened until after the expiration of the statute of limitation, the statute ordinarily is not a bar to prosecution if the indictment was timely filed. *United States v. Muse,* 633 F.2d 1041, 1041 (2d Cir.1980) (en banc) *cert. denied,* 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981); *United States v. Ramey,* 791 F.2d 317, 320 (4th Cir.1986); *United States v. Lakin,* 875 F.2d 168, 169 (8th Cir.1989), *United States v. Edwards,* 777 F.2d 644, 647 (11th Cir.1985) *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); *United States v. Richard,* 943 F.2d 115, 118 (1st Cir.1991).

We agree with these courts and hold that an indictment properly sealed under Rule 6(e) is found when it is filed, and tolls the statute of limitation for a reasonable period. Here, the indictment was sealed in 1984, well within the ten-year limitation period. If this sealed indictment meets the requirements of Rule 6(e)(4), then the statute was tolled.

### a. Proper Sealing

■ For a sealed indictment to toll the statute of limitation, the government must have a legitimate reason for the sealing. *See Ramey,* 791 F.2d at 321. Shell contends that the government is required to make a contemporaneous record of proceedings relating to sealing of an indictment for it to be found on the date it was filed. The 1984 sealed indictment does not have an affidavit attached explaining the reasons for sealing. Because it was not sealed properly, Shell asserts that it should be deemed returned when unsealed in 1990, two years after the expiration of the limitation period.

Most courts do not require a contemporaneous record of the government's application for sealing. *United States v. Srulowitz,* 819 F.2d 37, 41 (2d Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1988); *Richard,* 943 F.2d at 119; *Lakin,* 875 F.2d at 170–71; *but see United States v. Laliberte,* 131 F.R.D. 20, 21 (D.Mass.1990) (government must pro-

---

**1.** Federal Rule of Criminal Procedure 6(e)(4) provides:

> Sealed Indictments. The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the de-

fendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance of a warrant or summons.

vide affidavit at time of sealing, stating factual basis for sealing and reasonable estimate of when indictment will be unsealed). These courts reason that the defendant's right to challenge the propriety of sealing is fully protected by affording him the right to a hearing after the indictment is opened to the public. During the hearing, the government must demonstrate legitimate prosecutorial purposes for sealing. *Srulowitz,* 819 F.2d at 41; *Lakin,* 875 F.2d at 171.

We find the reasoning of these decisions persuasive and hold that the proper time for the government to provide a legitimate prosecutorial objective is when the defendant's motion to dismiss is heard. The government asserted here that it had the indictment sealed because it wished to locate and gain custody over Shell. This is a legitimate objective. Shell's right to challenge the propriety of the sealing was fully protected at the hearing on his motion to dismiss. We find the indictment was properly sealed.

**b. Reasonable Time**

■ An indictment may remain sealed beyond the limitation period but only for a reasonable time. *See United States v. Watson,* 599 F.2d 1149, 1155 (2d Cir.1979), *modified sub nom., United States v. Muse,* 633 F.2d 1041 (2d Cir.1980) (en banc), *cert. denied,* 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981). Shell argues that the court's decision should be upheld because the indictment was sealed for an unreasonable length of time, two years beyond the statute of limitation.

In *Watson,* the Second Circuit held that Rule 6(e)'s extension of the statutory limitation period must be reasonable. *Id.* at 1155. It determined that Rule 6(e) permits an extension only to the degree necessary to accommodate the prosecutorial interests that the sealing of an indictment legitimately furthers. *Id.*

Only two courts have attempted to define more precisely a "reasonable time" for sealing purposes. *United States v. Heckler,* 428 F.Supp. 269, 272 (S.D.N.Y.1976); *United States v. Sherwood,* 38 F.R.D. 14 (D.Conn.1964), *aff'd sub nom., United States v. Doyle,* 348 F.2d 715 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). These two courts focused on the defendant's availability to determine whether the length of the sealing period was reasonable. *Heckler,* 428 F.Supp. at 272 ("When the defendants are available the government may not seal an indictment for more than a reasonable time after the statute of limitation has expired."); *Sherwood,* 38 F.R.D. at 20 (holding that the indictment should have been unsealed no more than 90 days from the return date, the time period when the defendants were first available).

The government asserts that it sealed the indictment because it needed time to gain custody of Shell. It says it could not locate him because he lived overseas under assumed names. The district court found, however, that most of the delay resulted from the government's negligence in losing Shell's file for five years, and had nothing to do with any difficulty it had locating him. The court found that the government knew of Shell's Weber alias when it filed the 1984 indictment. It also found that Shell lived openly in Guam for the eight years he was there. He was available to the government. We find that the government's reason for sealing does not support the two-year delay beyond the limitation period. If Shell can show actual, substantial prejudice from this unreasonable delay, his indictment must be dismissed.

**c. Actual Prejudice**

■ A showing of substantial, irreparable, actual prejudice to the defendant may justify dismissal of an indictment sealed beyond the limitation period. *Edwards,* 777 F.2d at 649. In determining prejudice to the defendant, the relevant time period is the time between the sealing of the indictment and its unsealing. *Muse,* 633 F.2d at 1042; 1 Wright, *Federal Practice and Procedure,* § 110, pp. 306–7.

■ That time period here was six years. The court presumed prejudice due to the unreasonable length of this time period. We disagree and find that the length of the

delay does not establish a presumption of prejudice. We instead adopt the Eleventh Circuit's rationale in *United States v. Mitchell,* 769 F.2d 1544, 1547 (11th Cir. 1985).

In *Mitchell,* the court reviewed the dismissal of an indictment based on an unreasonable delay that allowed the statute of limitation to run. It affirmed the finding of unreasonable delay, but reversed the dismissal. 769 F.2d at 1547. It reasoned that although the statute of limitation protects defendants against stale charges,

> [t]he legitimate need of the government to protect its investigations by sealing indictments, however, must also be recognized. The sealing of an indictment allows the government to complete an investigation properly, and can toll the statute of limitations when the investigation must extend beyond the statutory period.

*Id.* at 1547–48. The *Mitchell* court found that, even though the sealing may have been continued unreasonably as the district court judge found, that factor must be balanced against the government's needs and unless actual prejudice results from the delay, dismissal of the indictment is not appropriate. *Id.* at 1547–48. It concluded that the court's decision "[gave] undue attention to the interests of defendants and virtually ignore[d] the competing interests of the government." *Id.* at 1548. Likewise, the district court in our case did not consider the legitimate interests of the government when it determined that the delay prejudiced Shell.

 Although Shell alleges that the six-year delay prejudiced him, he makes no factual showing as to witness inaccessibility, document destruction, or memory loss. *See e.g., Watson,* 599 F.2d at 1155 (dismissing indictment because of prejudice to defendant because of memory loss); *Heckler,* 428 F.Supp. at 272 (S.D.N.Y.1976) (dismissing indictment based on prejudice caused by memory loss and death of defense witness). He concedes that the delay has not harmed his ability to defend himself.

His only allegation of prejudice stems from anxiety he suffered because he did not know whether he would ever be charged. His anxiety alone does not meet the substantial prejudice standard. *See Edwards,* 777 F.2d at 649; *Richard,* 943 F.2d at 119. The delay in unsealing of the indictment did not prejudice him.

Because the government's interest justified sealing the indictment, and there was no resulting prejudice to the defendant, we reverse the district court's dismissal of Shell's indictment on statute of limitation grounds.

### III

 The district court's second basis for dismissing the indictment was that Shell's Sixth Amendment right to a speedy trial was violated. Under *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), courts consider four factors to determine whether a defendant has been denied his right to a speedy trial: the length of the delay, the reason for it, the defendant's assertion of right, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191. The district court found that all four factors warranted finding a constitutional violation. We review for abuse of discretion a dismissal for a violation of the constitutional right to a speedy trial. *United States v. Sears, Roebuck and Co. Inc.,* 877 F.2d 734, 739 (9th Cir.1989).

#### a. Length of Delay

 The length of delay is a threshold factor. If "presumptively prejudicial," the length of delay requires an examination of the other three *Barker* factors. *Sears,* 877 F.2d at 739. The delay is measured from the time of the indictment to the time of trial. *See United States v. Loud Hawk,* 474 U.S. 302, 314, 106 S.Ct. 648, 655, 88 L.Ed.2d 640 (1986).

 The government argues that the court erred in finding the six-year delay between the indictment and arrest presumptively prejudicial because the defendant was not in custody during that time. This court has held that a 39–month delay between indictment and arrest is sufficiently prejudicial to trigger the *Barker* analy-

sis where the defendant is not in custody. *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1985). We agree with the district court that this six-year delay was sufficient to warrant consideration of the other three *Barker* factors.

#### b. Reason for Delay

The court weighed the second factor against the government. In holding the government responsible for the delay, it concluded that "[t]hrough apparent inadvertence or neglect, no attempt was made to locate [Shell] between the time the indictment issued and 1989, when an inquiry from the State Department's San Francisco office to its Seattle office triggered a search."

 Once an accused has been indicted, the government has a constitutional duty to make a diligent, good faith effort to locate, apprehend and bring him to trial. *See Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). When the government acts negligently in seeking and apprehending an accused, the reason for the delay should be weighed against the government. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

Our review of the record convinces us that although the government agents made some attempt to find Shell, they did not act diligently enough. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence ... should be weighted less heavily"). The evidence supports the district court's finding.

#### c. Assertion of Right

The court did not weigh Shell's failure to assert his speedy trial right against him because it determined that "there [was] no evidence that [Shell] knew an indictment had issued or that there was an outstanding warrant for his arrest." The court found that because the indictment was sealed, he could not have known of it.

The government argues that Shell's use of an alias demonstrates that he knew there were charges against him. It contends that Shell's ignorance was deliberate. In *Williams*, this court held that where no evidence exists that a defendant knew about a public indictment, his failure to assert his right to a speedy trial will not be held against him. 782 F.2d at 1466. Williams, like Shell, moved to another jurisdiction and used an alias. These two factors did not prevent the court from upholding a finding that Williams had no knowledge of the charges. *Id.* The district court correctly refused to weigh the assertion of right factor against Shell because he did not know about the indictment until his arrest.

#### d. Prejudice

The government argues that the court erred in finding that the delay prejudiced Shell. The court found prejudice resulting from the length of the delay and the anxiety Shell suffered while he wondered if the government would arrest him.

 To determine prejudice, courts consider three interests: (1) the prevention of oppressive pretrial incarceration; (2) the minimizing of anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192; *Williams*, 782 F.2d at 1466. Shell has not been incarcerated during the past eight years. He concedes that he has not suffered any prejudice to his defense from the delay. His prejudice results only from the anxiety and fear of not knowing when the government would arrest him. The district court, citing *Williams*, found his anxiety sufficiently prejudicial to warrant dismissal of his indictment on Sixth Amendment grounds. We disagree.

The district court's reliance on *Williams* was misplaced. The *Williams* court held that no violation of the Sixth Amendment exists even when a considerable period of time passes between indictment and arrest, if the defendant fails to show actual prejudice. *Id.* at 1466. This court has noted that "[c]onclusory allegations of general anxiety and depression are present in al-

most every criminal prosecution. We find nothing in the record which discontinues the emotional strain experienced by Simmons from that of other criminal defendants.... We therefore conclude that such allegations ... constitute a minimal showing of prejudice." *United States v. Simmons*, 536 F.2d 827, 831–32 (9th Cir. 1976). Likewise, in *Sears*, this court held that the mere possibility of prejudice is not sufficient to justify dismissal on Sixth Amendment grounds. 877 F.2d at 740. We find that Shell cannot show actual prejudice resulting from the delay.

Because Shell cannot show actual prejudice, and the government did not intentionally delay his trial to gain a tactical advantage, we hold that Shell's Sixth Amendment right to a speedy trial was not violated.

REVERSED and REMANDED for trial.