961 F.2d 221
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Alton WINFIELD, Defendant-Appellant.
 No. 91-4092.
 United States Court of Appeals, Tenth Circuit.
 April 24, 1992.
 
 Before JOHN P. MOORE, ALDISERT,* and McWILLIAMS, Circuit Judges.
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Carl Alton Winfield appeals his conviction and sentence for the crime of bank robbery. He contends there was insufficient evidence of intimidation to sustain his conviction; that because of his trial counsel's incompetence, it was plain error for the trial court to fail to instruct on bank larceny; and in sentencing, the district court erred in failing to consider he was a victim of sexual abuse during childhood. We conclude defendant presents no cognizable error, and we affirm.
 
 
 2
 Defendant entered the Key Bank in Salt Lake City on December 18, 1990, approached the teller stations, and stood in line. Jo Lyn Calvert, a teller, observed Mr. Winfield and asked him to step to her station. What ensued is, for the purpose of our consideration, best described in her testimony:
 
 
 3
 Q [Plaintiff counsel] Then what happened?
 
 
 4
 A [Calvert] Then I asked him if I could help him, and he stepped over to my counter and put his hand on my--top of my counter, and said something in a very soft voice.
 
 
 5
 ....
 
 
 6
 Q ... Did you address him?
 
 
 7
 A Yes, I did. I said, "Sir, could I help you?"
 
 
 8
 Q And what did he do at that time?
 
 
 9
 A He--then he stepped over to my window and put his hands on the counter.
 
 
 10
 Q Would you put a W-2 where he was at that time, please. Thank you.
 
 
 11
 Mrs. Calvert, what was the first thing that Mr. Winfield said or did when he arrived at your teller window?
 
 
 12
 A He put his hands--he clasped his hands together and just put them on the counter, and spoke softly, and I could not here [sic] him at that time.
 
 
 13
 So then I asked him, I said, "What did you say?"
 
 
 14
 And then he just quietly, in a still soft voice, and he was very calm, said, "Give me a stack--put a stack of 20's on the counter."
 
 
 15
 Q What did you do in response to that, if anything?
 
 
 16
 A I was kind of nervous, and I kind of hesitated, and at that point he said, "Do it quickly."
 
 
 17
 And at that point I reached down--we have two drawers, and I reached down into the second drawer and put out two stacks of 20's for him.
 
 
 18
 Q After he said, "Do it"--or around the time he was saying, "Do it quickly," or after he said that, did you see him do anything?
 
 
 19
 A No I did not.
 
 
 20
 Q Did you see him do anything with his hands at anytime other than just have them clasped together on the counter?
 
 
 21
 A I looked up as I was reaching in to get--as I was pulling the money out, and he was lifting up his Levi jacket, and like he was reaching in--a reaching in motion like he was going to pull something out. And at that time I just hurried and did--put the 20's on the counter in hopes that he would leave.
 
 
 22
 Q Were you frightened at anytime while this was going on?
 
 
 23
 A I was really nervous. I just wanted him to leave the bank before anything happened.
 
 
 24
 Q Did you feel intimidated?
 
 
 25
 A Yes I did.
 
 
 26
 Q Did you feel concerned at all about your safety in any way?
 
 
 27
 A When he reached into his jacket, that's when I felt concerned about my safety and the safety of those in the bank.
 
 
 28
 Q Why was that?
 
 
 29
 A Because I--the gesture--my husband has a Levi jacket, and it has a pocket inside; and when he went to move inside, I thought he was going to pull out a weapon, and at that time I was nervous. And so my main thought in my mind was to get him out of the bank--do what he said and get him out of the bank as fast as I could.
 
 
 30
 Q How much money did you give Mr. Winfield?
 
 
 31
 A I gave him two stacks of 20's, which consist of a thousand dollars total.
 
 
 32
 R. II, 9-12.
 
 
 33
 On cross-examination, Ms. Calvert expanded, stating:
 
 
 34
 Q [Defendant counsel] You indicated that you felt danger. What does danger feel like?
 
 
 35
 A [Calvert] I was nervous. I felt like if I didn't do what he said, that something might happen worse. I don't know what danger feels like. I was nervous. I was scared.
 
 
 36
 ....
 
 
 37
 Q [By Mr. Guyon) [defendant counsel] And that was before you saw him either reach toward his jacket, is that correct?
 
 
 38
 A No. That was after; because I grabbed the first drawer first and noticed--and I looked up, and that's when he reached in, and that's when I grabbed the second drawer and just gave him the money.
 
 
 39
 R. II, 21, 29.
 
 
 40
 On the basis of this testimony, defendant contends his conviction should be reversed because the evidence of force, violence, or intimidation was insufficient as a matter of law. Despite this contention, the record fails to indicate the issue was preserved for appeal.
 
 
 41
 The predicate for raising an objection to the sufficiency of the evidence is a timely motion for judgment of acquittal. United States v. Teague, --- F.2d ----, 1992 WL 45476, at * 5 (7th Cir. Mar. 12, 1992); United States v. Richard, 943 F.2d 115, 117 (1st Cir.1991); Hughes v. United States, 320 F.2d 459, 460 (10th Cir.1963), cert. denied, 374 U.S. 966 (1964). Despite the provisions of 10th Cir.R. 28.2, counsel has failed to set forth where in the record he preserved the issue of the sufficiency of the record by making a motion for judgment of acquittal. Our search has failed to locate such a motion.
 
 
 42
 Nonetheless, we have examined the record to insure that counsel's failure does not result in a conviction that would be "clearly and grossly unjust." See Richard, 943 F.2d at 117. While the evidence is not overwhelming, we believe from the testimony of Ms. Calvert there is sufficient proof of intimidation by the defendant to support a conviction of bank robbery. See United States v. Slater, 692 F.2d 107 (10th Cir.1982).
 
 
 43
 Defendant next contends the trial court erred by not instructing the jury on the lesser offense of bank larceny. Admitting no request for such an instruction was made,[1] counsel argues, with inestimable candor, that "defence counsel's deficiency was his failure to offer a jury instruction to allow a finding of guilt of the lesser included offence of bank larceny under 18 U.S.Code § 2113(b)." He continues, "[t]his deficiency prejudiced Appellant's case where the element of intimidation was so tenuous that the jury could have found the Appellant guilty of the lesser included offence...." The extraordinary part of the argument obscured by counsel's use of the third person is he is the allegedly incompetent lawyer.
 
 
 44
 The government's response is to assume defendant's counsel is asserting a Sixth Amendment argument. Yet, it is unthinkable that counsel would be accusing himself of the type of incompetence that would arise to the level of a Sixth Amendment deprivation.
 
 
 45
 Of course, were we wrong in our perception, any consideration of such an issue is estopped by Beaulieu v. United States, 930 F.2d 805, 806-07 (10th Cir.1991). What we perceive, however, is an effort by counsel to explain why an appropriate instruction was not requested and why, then, we should reverse the judgment of conviction as a consequence.
 
 
 46
 Counsel's ingenuity aside, the greater fallacy in his argument is that the trial court would not have been required to give the lesser included offense instruction even had it been sought. We have said before, one of the criteria which must be met before the giving of a lesser included offense instruction is that one of the elements of the greater offense must be in dispute. United States v. Haar, 931 F.2d 1368, 1371 (10th Cir.1991). The element of intimidation was never disputed during trial.
 
 
 47
 Although defense counsel raises the issue of intimidation on appeal, the defense rested without presenting any evidence. Thus, the government's evidence of intimidation stands uncontroverted in the record. The absence of that evidentiary dispute is a sufficient reason why defendant was not entitled to an instruction on bank larceny. United States v. Lajoie, 942 F.2d 699, 701 (10th Cir.), cert. denied, 112 S.Ct. 328 (1991).
 
 
 48
 Finally, defendant asserts his sentence was "flawed" because the trial court did not consider his "childhood torture in satanic ritual." Like the other contentions raised by defendant, there is no factual support in the record for this argument.
 
 
 49
 Although defendant's brief describes in graphic detail physical indignities he was made to suffer allegedly at the hands of his mother, the record contains no evidence of such abuse. Indeed, we have no record at all of the sentencing save for the presentence investigation report.
 
 
 50
 Counsel did file a statement regarding sentencing (which the government asserts was untimely), but that statement contains none of the facts raised here for the first time. Indeed, only a conclusory statement that defendant's father believed defendant "had been ritually abused as a small child" was the sole mitigating representation made by the defense to the trial court. The record is silent whether this claim was either accepted or rejected by the judge.
 
 
 51
 Other than to assert the sentencing judge has a responsibility to consider mitigating circumstances, defense counsel does not inform us how this information should have been inserted into the sentencing calculus. We do not know, for example, whether he claims defendant was entitled to a downward adjustment in his criminal history, or whether he believes a departure was in order. We will not speculate. Indeed, even the basic claim that the mitigating circumstances asserted were not considered by the trial court is itself a speculation. We are satisfied no sentencing error has been demonstrated. Compare United States v. Vela, 927 F.2d 197 (5th Cir.), cert. denied, 112 S.Ct. 214 (1991).
 
 
 52
 AFFIRMED.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 No objection to any or all of the instructions appears of record