IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-7158
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARA SHARPE, MIKE GILLICH, JR.,
KIRKSEY MCCORD NIX, JR., JOHN
RANSOM,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Mississippi

_____
(June 25, 1993)
(      , 1993)


BEFORE SMITH, DUHÉ and WIENER, Circuit Judges.

PER CURIAM:

In this criminal appeal, Defendants-Appellants LaRa Sharpe, Mike Gillich, Jr., Kirksey McCord Nix, and John Ransom appeal their convictions under 18 U.S.C. § 371 for conspiracy to violate the fraud-by-wire statute[1] and the murder-for-hire statute,[2] and for substantive wire fraud violations. Nix and Gillich also appeal their convictions for substantive violation of the murder-for-hire statute. Although the Appellants raise a number of issues on appeal, we address only one: whether the sealed indictment tolled

_____

[1] 18 U.S.C. § 1343.

[2] 18 U.S.C. § 1958.

the statute of limitations. We conclude that a properly sealed indictment does indeed toll the statute of limitations, absent a showing of substantive and actual prejudice. As no such showing has been made in the instant case, there was no error, and we affirm. Having heard the arguments of counsel, studied their appellate briefs, and reviewed the record and the pertinent case law on all remaining issues, and having found no reversible error, we also affirm as to each of them, albeit without discussion.

I

FACTS AND PROCEEDINGS

The underlying conspiracy in this case was masterminded by Kirksey M. Nix while serving a life sentence in the state prison at Angola, Louisiana. Nix orchestrated a scam operation to defraud homosexuals of money, using both telephone and telegraph services, in hopes of obtaining funds sufficient to buy his way out of prison. The scam involved the placement of magazine advertisements seeking homosexual liaisons. When an interested person would respond, Nix or one of his associates would pretend to be in financial difficulties. The victim would be asked to wire money to one of Nix's associates in order to relieve the financial difficulties. Afterwards, then, the liaison could take place.

In perpetrating this scam, Nix enlisted the aid of several individuals outside the confines of prison. These supporting players included: (1) Mike Gillich, Jr., owner and operator of the Golden Nugget, a night club and strip joint in Biloxi, Mississippi; (2) John Ransom, a parolee from a Georgia prison; (3) LaRa Sharpe,

2

Nix's girlfriend and a paralegal; (4) Peter Halat, mayor of Biloxi and an attorney (also the employer of Sharpe and former law partner of Vincent Sherry), who acted as a trustee for a firm trust account maintained by Nix; (5) Arthur Mitchell and Robert Hallal, former prisonmates of Nix in Angola and participants in the scam (presented as government witnesses); and (6) various other participants in the scam, most notably Kellye Dawn Nix (Nix's stepdaughter and wife) and Juanda Jones, Sharpe's mother (who also testified for the government).

Sometime in 1986, Nix discovered (or thought he discovered) that $200,000 of the money he had entrusted to Gillich and Halat in Biloxi was missing. Nix apparently suspected Mississippi state judge Vincent Sherry, former law partner to Halat. Judge Sherry purportedly was aware of Halat's involvement with Gillich. Moreover, Judge Sherry's wife, Margaret, a reform mayoral candidate, was also aware of the connection and had promised to shut down Gillich's Golden Nugget night club, the place to which Nix's funds were sent. The government alleged at trial that Nix, with the assistance of various scam participants, including Sharpe and her mother who travelled to Jackson to meet Ransom, hired him to kill the Sherrys. On September 14, 1987, the Sherrys were killed in their home.

On May 15, 1991, the grand jury issued the following sealed indictments: (1) Count I charged all four defendants with conspiracy under 18 U.S.C. § 371 to violate the wire fraud statute (18 U.S.C. § 1343) and the murder-for-hire statute (18 U.S.C. §

3

1958(a)); (2) Count II charged all four defendants with a substantive violation of wire fraud; (3) Nix, Gillich, and Ransom were charged in Count III violating the murder-for-hire statute, including aiding and abetting, by travelling from Louisiana to Mississippi to arrange the murder; (4) Count IV charged Nix, Gillich, and Ransom with a violation of the murder-for-hire statute, based on Ransom's interstate travel from Georgia to Mississippi. The indictments were returned within the five year statute of limitations (measured from the day of the last overt act of the conspiracy), but were not unsealed until May 21, 1991, five years and five days after the last overt act.

The defendants made numerous pre-trial motions, including one for dismissal based on a statute of limitations violation. The court denied that motion, finding no statute of limitation problem.

At the conclusion of the trial the jury returned a verdict of guilty for all four defendants on Counts I and II. Nix and Gillich were found guilty on the Count III, travel in aid of murder-for-hire, but Ransom was acquitted. Additionally, Nix, Gillich, and Ransom were acquitted on the Count IV murder-for-hire charge.

II

DISCUSSION

The only issue requiring discussion in this case is whether the statute of limitations ran on the mail fraud count because the indictment, although returned within the limitations period, was not unsealed until five days after the limitations period had expired. Although this issue is res nova in our circuit, we are

4

guided by the decisions of the First, Second, Fourth, Eighth, Ninth, and Eleventh Circuits, which are in agreement on the rule. As discussed below, we adopt the constant jurisprudence of these circuits and conclude that the application of their holdings mandates an affirmance of the district court's decision.

The other circuits are uniform in holding that "when a sealed indictment is not opened until after the expiration of the statute of limitation, the statute ordinarily is not a bar to prosecution if the indictment was timely filed."[3] The case law also contains a uniform exception to this rule. A sealed indictment will not relate back to the time of its filing for limitations purposes if the defendant can demonstrate that substantial actual prejudice occurred between the sealing and the unsealing.[4]

Nix, Gillich, and Sharpe do not assert that they have suffered any substantial actual prejudice, as the indictments were sealed for a mere six daysSQone before the limitation period expired and five thereafter.[5] Instead, they insist that the indictments were

---

[3] United States v. Shell, 961 F.2d 138, 141 (9th Cir. 1992); see United States v. Richard, 943 F.2d 115, 118 (1st Cir. 1991); United States v. Lakin, 875 F.2d 168, 169 (8th Cir. 1989); United States v. Ramey, 791 F.2d 317, 320 (4th Cir. 1986); United States v. Edwards, 777 F.2d 644, 647 (11th Cir. 1985), cert. denied, 475 U.S. 1123 (1986); United States v. Muse, 633 F.2d 1041, 1041 (2d Cir. 1980)(en banc), cert. denied, 450 U.S. 984 (1981).

[4] United States v. Srulowitz, 819 F.2d 37, 40 (2d Cir. 1987).

[5] In addition to these requirements, two circuits, the Second and Ninth, have held that "[a]n indictment may remain sealed beyond the limitation period but only for a reasonable time." Shell, 961 F.2d at 142; see United States v. Watson, 599 F.2d 1149, 1155 (2d Cir. 1979), modified sub nom. United States v. Muse, 633 F.2d at 1041. Watson, later vacated and modified by

sealed for improper purposes and that the government has the burden of establishing the reason for sealing the indictment. Again, the consistent and persuasive reasoning of the other circuits undermines these assertions.

A judicial officer may seal an indictment under FED.R.CRIM.P 6(e)(4), which provides:

> The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons.

An indictment is properly sealed when the government requests that the magistrate judge seal the indictment "for any legitimate prosecutorial objective or where the public interest otherwise requires it."[6] Thus, "the discretion of the district judge or magistrate to seal an indictment is broader than merely the need to take the defendant into custody."[7]

---

the en banc court, raises the possibility that an unreasonable delay coupled with bad faith by the government could constitute a due process violation. In Muse, however, the en banc court held that the sixteen month delay was simply a factor in determining actual substantial prejudice. In Shell, the Ninth Circuit followed this approach, holding that, although the six-year delay was unreasonable, there was no actual prejudice. In so holding, the court rejected the district court's conclusion that such an unreasonable delay established a presumption of prejudice. Shell, 961 F.2d at 142-43. As the indictments were sealed for such a short period of time, we need not reach this issue, but note that the government's ability to toll the statute of limitations by sealing and indictment is not unlimited.

[6] Richard, 943 F.2d at 118; Lakin, 875 F.2d at 170-71.

[7] Ramey, 791 F.2d at 320-21; see Edwards, 777 F.2d at 647-49; United States v. Mitchell, 769 F.2d 1544, 1547-48 (11th Cir. 1985); United States v. Southland Corp., 760 F.2d 1366, 1379-80

6

In addition, the magistrate judge is not required to make a contemporaneous record of the reasons for sealing the indictment, "[as] sealing in the first instance is but a ministerial act, and it is wholly within the discretion of the Magistrate whether to require the prosecutor to justify a request to seal."[8] Moreover, development of such a record would increase the chances of disclosure.[9] If challenged, the government must explain and support the legitimacy of its reasons for sealing the indictment. The government only does so, however, at a hearing <u>after</u> the indictment is unsealed.[10] And, the magistrate judge's initial decision to seal the indictment is given great deference.[11]

In a hearing held after the instant indictment was unsealed, the prosecutor testified that the indictment was sealed: (1) in an effort to accommodate counsel for Gillich; (2) in order to locate Sharpe; and (3) out of concern for pre-trial publicity before all the defendants would be notified. The district court found that these reasons constituted a legitimate prosecutorial purpose. Particularly when we consider the deference accorded the magistrate judge in such determinations, we find we are in full agreement with the district court.

---

(2d Cir. 1985).

[8] <u>Srulowitz</u>, 819 F.2d at 41.

[9] <u>Id.</u>

[10] <u>Shell</u>, 961 F.2d at 141-42; <u>Lakin</u>, 875 F.2d at 171; <u>Srulowitz</u>, 819 F.2d at 41.

[11] <u>Lakin</u>, 875 F.2d at 172; <u>Srulowitz</u>, 819 F.2d at 41; <u>Ramey</u>, 791 F.2d at 321; <u>Edwards</u>, 777 F.2d at 648.

III

CONCLUSION

Again, the sole issue we discuss today is one that is res nova in this circuit: whether an indictment sealed within the statutory period of limitations but unsealed after that time period has expired tolls the statute of limitations. We adopt the reasoning of the other circuits on this issue, holding that a timely filed indictment does not bar prosecution absent a showing of actual substantial prejudice. As the Appellants have failed to demonstrate any such prejudice, the prosecution was not barred.

For the foregoing reasons, the opinion of the district court is

AFFIRMED.